## CITY OF NEWPORT, KENTUCKY, ET AL. *v.* IACOBUCCI, DBA TALK OF THE TOWN, ET AL.

No. 86–139.   Decided November 17, 1986

PER CURIAM.

In 1982, the City Commission of Newport, Ky., enacted Ordinance No. 0–82–85.  This ordinance prohibited nude or nearly nude dancing in local establishments licensed to sell

liquor for consumption on the premises.[1]  A state law imposing an almost identical prohibition on nude dancing was upheld by this Court in *New York State Liquor Authority* v. *Bellanca,* 452 U. S. 714 (1981) *(per curiam),* as being within the State's broad power under the Twenty-first Amendment[2] to regulate the sale of liquor within its boundaries.

Respondents, proprietors of Newport liquor establishments that offered nude or nearly nude entertainment, challenged the ordinance in federal court.  They contended that the ordinance deprived them of their rights under the First and Fourteenth Amendments, and they sought declaratory and injunctive relief under 42 U. S. C. § 1983 against its enforcement.[3]  The District Court ruled that the ordinance was constitutional, stating that it "is squarely within the doc-

---

[1] Newport Ordinance No. 0–82–85, § II, provides:

"It shall be unlawful for and a person is guilty of performing nude or nearly nude activity when that person appears on a business establishment's premises in such a manner or attire as to expose to view any portion of the pubic area, anus, vulva or genitals, or any simulation thereof, or when any female appears on a business establishment's premises in such manner or attire as to expose to view portion of the breast referred to as the areola, nipple, or simulation thereof."

Sections IV and V specify criminal and civil penalties for any violation of the ordinance.  A proprietor who knowingly permits the proscribed activity on his premises may have his occupational license and liquor license revoked.

Ordinance No. 0–82–85 is set forth in its entirety in the appendix to the Court of Appeals' opinion.  See 785 F. 2d 1354, 1360–1362 (CA6 1986).

[2] The Twenty-first Amendment provides in relevant part: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

[3] Respondents also challenged a second Newport ordinance, see 785 F. 2d, at 1362–1363, requiring employees of establishments that sell liquor by the drink to register with the Police Department and be fingerprinted. The Court of Appeals upheld the constitutionality of this second ordinance as a valid implementation of the city's police power.  *Id.,* at 1355–1358. That ordinance is not at issue here.

trine of *Bellanca* . . . and must be upheld on that basis."
App. to Pet. for Cert. 50a.

A divided panel of the United States Court of Appeals for
the Sixth Circuit reversed that judgment. 785 F. 2d 1354
(1986). It found the decision in *Bellanca* inapplicable because
in Kentucky local voters, rather than the city or the Common-
wealth, determine whether alcohol may be sold. Pursuant to
the authority granted by the Commonwealth's Constitution,[4]
Kentucky expressly authorizes a city to conduct a popular
election on a question of local prohibition when a specified
proportion of qualified voters petition for such an election.
See Ky. Rev. Stat. §§ 242.010–242.990 (1981 and Supp. 1986).
Noting this Court's statement in *Bellanca* that "[t]he State's
power to ban the sale of alcoholic beverages entirely includes
the lesser power to ban the sale of liquor on premises where
topless dancing occurs," 452 U. S., at 717, the Court of
Appeals' majority nevertheless concluded that the ordinance
could not be justified under the broad authority bestowed by
the Twenty-first Amendment. It stated that this case does
not fall within the *Bellanca* "doctrine" or "rationale" because
the city "cannot exercise in part a power it does not hold in
full." 785 F. 2d, at 1358. The court remanded the case for a
determination, among other things, of the city's authority to
enact the ordinance under its police power. The dissenting
judge argued that the majority read *Bellanca* too narrowly,
and he contended that the city is not restricted solely to the
exercise of the police power to regulate the liquor industry.

We agree with the dissent's conclusion that this case is con-
trolled by *Bellanca*, and we therefore reverse. The reach of

---

[4] The Kentucky Constitution, § 61, provides:

"The General Assembly shall, by general law, provide a means whereby
the sense of the people of any county, city, town, district or precinct may
be taken, as to whether or not spirituous, vinous or malt liquors shall be
sold, bartered or loaned therein, or the sale thereof regulated. But noth-
ing herein shall be construed to interfere with or to repeal any law in force
relating to the sale or gift of such liquors. All elections on this question
may be held on a day other than the regular election days."

the Twenty-first Amendment is certainly not without limit,[5] but previous decisions of this Court have established that, in the context of liquor licensing, the Amendment confers broad regulatory powers on the States.

"While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals." *California* v. *LaRue*, 409 U. S. 109, 114 (1972).

This regulatory authority includes the power to ban nude dancing as part of a liquor license control program. "In *LaRue* . . . we concluded that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a State could therefore ban such dancing as a part of its liquor license program." *Doran* v. *Salem Inn, Inc.*, 422 U. S. 922, 932–933 (1975). In *Bellanca*, the Court upheld a state statute imposing just such a ban.

The Court of Appeals misperceived this broad base for the ruling in *Bellanca* and seized upon a single sentence, characterizing it as the "doctrine" or "rationale" of *Bellanca*. Because a Kentucky city cannot ban the sale of alcohol without election approval, the court concluded that it similarly cannot

---

[5] See, *e. g.*, *California* v. *LaRue*, 409 U. S. 109, 120, n. (1972) (Stewart, J., concurring):

"This is not to say that the Twenty-first Amendment empowers a State to act with total irrationality or invidious discrimination in controlling the distribution and dispensation of liquor within its borders. And it most assuredly is not to say that the Twenty-first Amendment necessarily overrides in its allotted area any other relevant provision of the Constitution. See *Wisconsin* v. *Constantineau*, 400 U. S. 433; *Hostetter* v. *Idlewild Bon Voyage Liquor Corp.*, 377 U. S. 324, 329–334; *Dept. of Revenue* v. *James Beam Co.*, 377 U. S. 341."

regulate nude dancing in bars. In holding that a State "has broad power . . . to regulate the times, places, and circumstances under which liquor may be sold," *Bellanca*, 452 U. S., at 715, this Court has never attached any constitutional significance to a State's division of its authority over alcohol. The Twenty-first Amendment has given broad power to the States and generally they may delegate this power as they see fit.[6]

There is certainly no constitutional requirement that the same governmental unit must grant liquor licenses, revoke licenses, and regulate the circumstances under which liquor may be sold. Indeed, while Kentucky provides that the question of local prohibition is to be decided by popular election, the parties are in agreement that the city is vested with the power to revoke a liquor license upon a finding of a violation of state law, a state liquor regulation, or a city ordinance. See Brief in Opposition 7. Yet, the rationale of the opinion of the Court of Appeals implies that, because of the Kentucky Constitution, neither the State nor the city may revoke a liquor license under the authority of the Twenty-first Amendment. Only a strained reading of *Bellanca* would require each licensing decision to be made by plebiscite. Moreover, there is no statutory provision that gives the voters direct authority, once the sale of alcohol is permitted, to determine the manner of regulation. Thus, if respondents were to prevail in their argument that only voters can ban nudity because only voters have the authority to ban the sale of alcohol, it is possible that nude dancing in bars would be immune from any regulation.

The Newport City Commission, in the preamble to the ordinance, determined that nude dancing in establishments serving liquor was "injurious to the citizens" of the city. It found the ordinance necessary to a range of purposes, including "prevent[ing] blight and the deterioration of the City's neigh-

---

[6] Because it found *Bellanca* inapplicable, the Court of Appeals did not reach the state-law question of delegation of authority by the Commonwealth to the city of Newport. We express no opinion on this issue.

borhoods" and "decreas[ing] the incidence of crime, disorderly conduct and juvenile delinquency." See 785 F. 2d, at 1360. "Given the added presumption in favor of the validity of the . . . regulation in this area that the Twenty-first Amendment requires," *California* v. *LaRue*, 409 U. S., at 118–119, it is plain that, as in *Bellanca*, the interest in maintaining order outweighs the interest in free expression by dancing nude. The fact that the Commonwealth of Kentucky has delegated one portion of its power under the Twenty-first Amendment to the electorate—the power to decide if liquor may be served in local establishments—does not differentiate this case from *Bellanca*.

The petition for certiorari is granted, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA would grant the petition for a writ of certiorari and set the case for oral argument.

JUSTICE MARSHALL dissents from this summary disposition, which has been ordered without affording the parties prior notice or an opportunity to file briefs on the merits. See, *e. g., Acosta* v. *Louisiana Dept. of Health and Human Resources*, 478 U. S. 251 (1986) (MARSHALL, J., dissenting).

JUSTICE STEVENS, with whom JUSTICE BRENNAN joins, dissenting.

As I have previously written, the reasoning in the *per curiam* summary disposition in *New York State Liquor Authority* v. *Bellanca*, 452 U. S. 714 (1981), is "blatantly incorrect." *Id.*, at 725 (STEVENS, J., dissenting). Neither the plain language nor a fair construction of the purpose of the Twenty-first Amendment lends any support to the Court's holding that the Twenty-first Amendment shields restrictions on speech from full First Amendment review. Without repeating what I said in that opinion, I believe it important

to highlight some of the fundamental defects in the Court's analysis.

At one time, not long ago, it was considered elementary that the Twenty-first Amendment merely created an exception to the normal operation of the Commerce Clause. See *Craig* v. *Boren*, 429 U. S. 190, 206 (1976). As the Court explained shortly after the Amendment's passage, the Amendment "sanctions the right of a State to legislate concerning intoxicating liquors brought from without, unfettered by the Commerce Clause." *Ziffrin, Inc* v. *Reeves*, 308 U. S. 132, 138 (1939); see also *State Board of Equalization* v. *Young's Market Co.*, 299 U. S. 59 (1936).

In *Craig* the Court flatly rejected the Twenty-first Amendment as a basis for sustaining a state liquor regulation that otherwise violated the Equal Protection Clause. The Court pointed out that, "[a]s one commentator has remarked: 'Neither the text nor the history of the Twenty-first Amendment suggests that it qualifies individual rights protected by the Bill of Rights and the Fourteenth Amendment where the sale or use of liquor is concerned.'" 429 U. S., at 206 (quoting P. Brest, Processes of Constitutional Decisionmaking, Cases and Materials 258 (1975)); see also *Larkin* v. *Grendel's Den, Inc.*, 459 U. S. 116, 122, n. 5 (1982); *Moose Lodge No. 107* v. *Irvis*, 407 U. S. 163, 178–179 (1972); *Wisconsin* v. *Constantineau*, 400 U. S. 433, 436 (1971).

In recent years, however, the Court has completely distorted the Twenty-first Amendment. It now has a barely discernible effect in Commerce Clause cases, see, *e. g.*, *Brown-Forman Distillers Corp.* v. *New York State Liquor Authority*, 476 U. S. 573 (1986); *Bacchus Imports, Ltd.* v. *Dias*, 468 U. S. 263, 279 (1984), but, under *Bellanca* and the Court's decision today, it may be dispositive in First Amendment cases. This paradox cannot be overstated: reading *Bellanca* one would have thought that the Court was prepared to recognize some bite in the Twenty-first Amendment. The intervening decisions in *Brown-Forman* and *Bacchus*

demonstrate, however, that it is toothless except when freedom of speech is involved.[1]

Were this internal inconsistency in interpreting the Twenty-first Amendment the only problem with the Court's analysis, that would still be enough to call these decisions into question. But the problem is far more severe and dangerous than that. The Court has a duty in this case to "assess the substantiality of the governmental interests asserted [and] determinine whether those interests could be served by means that would be less intrusive on activity protected by the First Amendment." *Schad* v. *Mount Ephraim*, 452 U. S. 61, 70 (1981). Shirking this responsibility, the Court instead relies exclusively on the Twenty-first Amendment to sustain a regulation of speech that it assumes, *arguendo*, would otherwise violate the First Amendment. Through the use of a *per curiam* summary disposition, the Court concludes that municipal ordinances and state statutes regu-

---

[1] The Court fails to explain how its treatment of freedom of speech in *New York State Liquor Authority* v. *Bellanca*, 452 U. S. 714 (1981), and this case is consistent with its discussion of the Twenty-first Amendment's lack of effect on the Bill of Rights in *Craig* v. *Boren*, 429 U. S. 190 (1976). Nor does the Court mention that in a post-*Bellanca* decision it unequivocally rejected the notion that a State may "exercise its power under the Twenty-first Amendment in a way which impinges upon the Establishment Clause of the First Amendment." *Larkin* v. *Grendel's. Den, Inc.*, 459 U. S. 116, 122, n. 5 (1982). There was absolutely no discussion of any added presumption of validity in *Larkin*.

These vastly different effects that the Court has attributed to the Twenty-first Amendment can surely not be explained as reflecting a difference in the value that is placed on free speech, from that which is placed on the Equal Protection Clause, or the Establishment Clause. In *Valley Forge Christian College* v. *Americans United for Separation of Church and State, Inc.*, 454 U. S. 464 (1982), the Court firmly declared that there is no "principled basis on which to create a hierarchy of constitutional values." *Id.*, at 484. In so stating, the Court declined to afford the Establishment Clause any special respect. Yet today, the Court not only appears to reject the proposition that all constitutional values are equivalent, but actually concludes that some of the other values protected by the First Amendment are at the low end of the sliding scale.

lating expression in business establishments licensed to sell liquor for consumption on the premises are equally immune from facial challenges predicated on the First Amendment.[2] Unlike its holding in *California* v. *LaRue*, 409 U. S. 109 (1972), the Court also concludes that there is no need to consider the substantiality of the evidence supporting the city's justification for its ordinance;[3] the articulation of a legiti-

---

[2] *Bellanca*, of course, dealt with the Twenty-first Amendment's effect on a state statute, not on a municipality's ordinance. The distinction between States and their subparts is dispositive in some areas of the law. See, *e. g., Community Communications Co.* v. *Boulder*, 455 U. S. 40, 48–52 (1982) (antitrust immunity for "state action"); *Illinois* v. *City of Milwaukee*, 406 U. S. 91, 93–98 (1972) (Supreme Court's original jurisdiction); *Lincoln County* v. *Luning*, 133 U. S. 529 (1890) (Eleventh Amendment). Of course, in some other areas, a municipality is equated with the State. See, *e. g., Waller* v. *Florida*, 397 U. S. 387 (1970) (double jeopardy); *Avery* v. *Midland County*, 390 U. S. 474, 480 (1968) (Fourteenth Amendment).

These cases demonstrate that the "particular factual and legal context is all important" in determining whether the state-municipality distinction is relevant. *Lafayette* v. *Louisiana Power & Light Co.*, 435 U. S. 389, 430, n. 7 (1978) (Stewart, J., dissenting). Today, however, for the first time in the Twenty-first Amendment's history, the Court holds that it applies equally to municipalities. Until now, the Court had twice been faced with cases involving delegation of a State's Twenty-first Amendment authority, and it reserved passing on the delegation question in both cases. See *Grendel's Den*, 459 U. S., at 122; *Doran* v. *Salem Inn, Inc.*, 422 U. S. 922, 933 (1975). I certainly would have thought that this question merits some analysis, even if it does not, in the Court's view, merit more than a *per curiam* summary reversal.

[3] In *LaRue*, California's Department of Alcoholic Beverage Control had held hearings on the problems that had become associated with nude dancing. Witnesses included representatives of law enforcement agencies, counsel, and owners of licensed premises, and Department investigators. 409 U. S., at 111. The evidence demonstrated that a wide range of illegal conduct, including juvenile prostitution, indecent exposure to young girls, rapes, and assault on police officers, was taking place in and around the nude dancing establishments. *Ibid.* The Court's decision to uphold the regulation was thus grounded in "the evidence from the hearings that [the Department] cited to the District Court." *Id.*, at 115. See also *Schad* v. *Mount Ephraim*, 452 U. S. 61, 69–73 (1981) (refusing to uphold infringe-

mate purpose in the preamble to the ordinance is sufficient. In the words of a student commentator, "one must inquire why the Court [chooses] to go to such extremes to avoid a first amendment analysis." Recent Developments — Constitutional Law, 19 Vill. L. Rev. 177, 185 (1973).

There are dimensions to this case that the Court's opinion completely ignores. To begin with, the Newport ordinance is not limited to nude dancing, "gross sexuality," or barrooms.[4] On the contrary, the ordinance applies to every business establishment that requires a liquor license, and, even then, its prohibition is not limited to nudity or to dancing.[5] The State's power to regulate the sale of alcoholic beverages extends to a host of business establishments other than ordinary bars. See Ky. Rev. Stat. § 243.020(3) (1981). For example, a theater cannot sell champagne during an intermission without a liquor license. It is surely strange to suggest that a dramatic production like "Hair" would lose its First Amendment protection because alcoholic beverages might be served

ment of First Amendment rights where the State did not present actual evidence to support its purported justifications for the statute). This case stands in striking contrast; the Court of Appeals stated that "no substantive evidence concerning the government's justifications for the ordinance was presented" to the District Court. 785 F. 2d 1354, 1359 (1986).

[4] This is not to say that an ordinance limited to barrooms would necessarily be valid. As I suggested in *Bellanca*, 452 U. S., at 723, n. 10, a barroom might be the most appropriate forum for this type of entertainment since the patrons of such establishments generally know what to expect when they enter and they are free to leave if they disapprove of what they see or hear. Cf. *Splawn* v. *California*, 431 U. S. 595, 604 (1977) (STEVENS, J., dissenting) (bookstore's advertisement that it sold sexually provocative material put uninterested passersby on notice). This case is wholly unlike those in which we have recognized the legitimate interest in keeping pigs out of the parlor. Cf. *FCC* v. *Pacifica Foundation*, 438 U. S. 726, 750 (1978). As long as people who like pigs keep them in secluded barnyards, they do not offend the sensibilities of the general public.

[5] The ordinance makes it a crime for any female to appear on a licensed business establishment's premises "in such manner or attire as to expose to view portion of the breast referred to as the areola, nipple, or simulation thereof."

in the lobby during intermission.[6]  See *California* v. *LaRue,* 409 U. S., at 121 (Douglas, J., dissenting).

Perhaps the Court would disavow its rationale if a city sought to apply its ordinance to the performers in a play like "Hair," or to a production of "Romeo and Juliet" containing a scene that violates Newport's ordinance.  See *Southeastern Promotions, Ltd.* v. *Conrad,* 420 U. S. 546 (1975).  But such a disavowal would, I submit, merely confirm my view that the Twenty-first Amendment really has no bearing whatsoever on the question whether the State's interest in maintaining order in licensed premises outweighs the interest in free expression that is protected by the First Amendment — whether that interest is asserted by a dancer, an actor, or merely an unpopular customer.[7]

Similarly, I recognize that the Court's attention in this case is focused on the specter of unregulated nudity, particularly sexually suggestive dancing.  But if there is any integrity to the Court's reasoning on the State's power under the Twenty-first Amendment, it must also embrace other forms of expressive conduct or attire that might be offensive to the majority, or perhaps likely to stimulate violent reactions, but would nevertheless ordinarily be entitled to First Amend-

---

[6] It is of no consolation that the bar owner can retain nude dancing as long as he forgoes his liquor license, or that a theater may run a production with some nudity as long as it does the same.  See *California* v. *LaRue,* 409 U. S., at 136–137 (MARSHALL, J., dissenting).  Even 23 years ago it was "too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." *Sherbert* v. *Verner,* 374 U. S. 398, 404 (1963); see generally Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv. L. Rev. 1439 (1968).

[7] One of the anomalies of the Court's approach is that Newport's ordinance would presumably be subject to vastly different scrutiny were a bar owner to sell only liquor that is produced within the State.  Since the Twenty-first Amendment deals only with a State's power to regulate "transportation or importation into" the State, it would have no effect on a Kentucky bar selling Kentucky bourbon.  In such a case, the full force of the First Amendment would apply.

ment protection.[8]  For example, liquor cannot be sold in an athletic stadium, hotel, restaurant, or sidewalk cafe without a liquor license.  According to the Court's rationale any restriction on speech—be it content based or neutral—in any of these places enjoys a presumption of validity.  It is a strange doctrine indeed that implies that Paul Robert Cohen had a constitutional right to wear his vulgar jacket in a courtroom, but could be sent to jail for wearing it in Yankee Stadium. See *Cohen* v. *California,* 403 U. S. 15 (1971).

Given these concerns, I cannot concur in yet another summary disposition that gives such short shrift to these issues, without even the benefit of briefing on the merits.  *Bellanca* should not be applied, much less extended,[9] without taking cognizance of the intervening decisions that have further limited the effect of the Twenty-first Amendment in other areas. Moreover, I continue to believe that the Court is quite wrong in proceeding as if the Twenty-first Amendment repealed not only the Eighteenth Amendment, but some undefined portion of the First Amendment as well.

I respectfully dissent.

---

[8] Notwithstanding the Court's broad pronouncements on the omnipotence of the Twenty-first Amendment, I would hope that it would still "be most difficult to sustain a law prohibiting political discussions in places where alcohol is sold by the drink, even though the record may show, conclusively, that political discussions in bars often lead to disorderly behavior, assaults and even homicide." *Bellanca* v. *New York State Liquor Authority,* 50 N. Y. 2d 524, 531, n. 7, 407 N. E. 2d 460, 464, n. 7 (1980).

[9] See n. 2, *supra.*