[No. E004578. Fourth Dist., Div. Two. Sept. 14, 1989.]

CITY OF RANCHO CUCAMONGA, Plaintiff and Respondent, v. WARNER CONSULTING SERVICES, LTD., et al., Defendants and Appellants.

COUNSEL

Quan, Cohen, Kurahashi, Hsieh & Scholtz and Kenneth P. Scholtz for Defendants and Appellants.

Covington & Crowe and Robert E. Dougherty for Plaintiff and Respondent.

OPINION

DABNEY, J.—Warner Consulting Services, Ltd., Thomas Logan Green, and Logan P. Green (collectively, Warner) appeal from a permanent injunction which prohibits topless dancing at Warner's Cowgirl Theater. Warner contends: (1) the State of California has not delegated authority to the City of Rancho Cucamonga (City) under the Twenty-first Amendment to regulate nonobscene topless dancing at premises licensed to sell alcoholic beverages; (2) topless dancing is protected conduct under the California Constitution; and (3) as an establishment primarily devoted to theatrical entertainment, the Cowgirl Theater is exempt from the City ordinance banning topless dancing.

FACTS

In April 1984 the City brought suit against Warner, as the owner-operator of the Cowgirl Theater, to enjoin violations of local ordinances and a public nuisance. Ordinance 200-B, which added chapter 9.08 to the City Municipal Code, makes it a misdemeanor for waiters, waitresses or entertainers to expose buttocks, genitals or female breasts in establishments which serve alcoholic beverages, or for anyone to permit or procure such conduct. (Mun. Code, §§ 9.08.010-9.08.030.) However, these sections do not apply to "a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances." (Mun. Code, § 9.08.040.)

Evidence at trial showed that female performers at the Cowgirl Theater dance topless on a raised stage set back six feet from the nearest patron.

When not performing, the dancers act as waitresses. The Cowgirl Theater does not require its customers to purchase any minimum number of alcoholic drinks, but does require all customers to pay an admission fee. The Cowgirl Theater charges higher prices for drinks than other local bars do. The Cowgirl Theater derives 75 percent of its income from the sale of alcoholic beverages. Thomas Green testified that the primary business purpose of the Cowgirl Theater is to offer entertainment.

Warner presented the expert opinion testimony of Dr. James H. Butler that the Cowgirl Theater is a theater and is primarily devoted to theatrical performance. Dr. Butler, professor emeritus and former chair of the University of Southern California Drama Department, observed a dance performance at the Cowgirl Theater. Dr. Butler testified that the dance took place on a stage and "had all the things we normally associate with theater." Those characteristics included dressing rooms, lighting, a sound system, a stage, and seating arranged to give the audience a view of the stage.

Dr. Butler explained that the word "theater" is derived from a Greek word which means "viewing place or seeing place." A modern theater may have a central stage or a thrust stage, which brings the audience closer to the performers. The stage at the Cowgirl Theater is a thrust stage. The seating at the Cowgirl Theater is not fixed to the floor. However, that did not affect Dr. Butler's opinion that the Cowgirl Theater was a theater, because many dinner theaters or buildings converted into theaters from other uses do not have permanent seating. Dr. Butler did not consider the fact that the performers also waited on customers inconsistent with his opinion that the place was a theater.

Dr. Butler described the performance he observed as a modified striptease. He noted that striptease is a form of theatrical performance, albeit not of the highest nature. Dr. Butler formed the opinion that the audience was primarily there for the purpose of watching the theatrical performance. Dr. Butler noted, "Their eyes were riveted on what was happening on the stage." On cross-examination, Dr. Butler was asked if the principal business of the establishment was the sale of alcoholic beverages. Dr. Butler responded, "No, I would think that it's dancing. You're coming in to watch an entertainment. And I think the drinking in this case becomes incidental. [¶] Because why pay the extra amount to booze? You pay that extra amount to see the girls."

The Cowgirl Theater has an outdoor advertising sign which says "Cowgirl Topless Theater." The Cowgirl Theater advertises in the Yellow Pages under both "Theaters" and "Cocktail Lounges."

Following trial, the court found no zoning violation. The court found that Warner had violated Ordinance 200-B and issued a permanent injunction which provides: "[Warner is] permanently enjoined . . . from permitting, procuring, counseling or assisting any other person who acts as a waiter, waitress or entertainer at the . . . [Cowgirl Theater] . . . to expose the female breast, at or below the areola thereof, or his or her genitals or buttocks while alcoholic beverages are being served for consumption on the premises of said establishment." The court ruled as a matter of law that the Cowgirl Theater did not fit within the theater exception of City Municipal Code section 9.08.040.

### DISCUSSION

██ Dance, including nonobscene topless or nude dancing, is a medium of expression protected under the First Amendment. (*Schad* v. *Mt. Ephraim* (1981) 452 U.S. 61, 66 [68 L.Ed.2d 671, 678-679, 101 S.Ct. 2176]; *Doran* v. *Salem Inn, Inc.* (1975) 422 U.S. 922, 932 [45 L.Ed.2d 648, 659-660, 95 S.Ct. 2561]; *Morris* v. *Municipal Court* (1982) 32 Cal.3d 553, 564 [186 Cal.Rptr. 494, 652 P.2d 51].) Nonetheless, a state may regulate such entertainment as part of a liquor license program without violating the First Amendment. The United States Supreme Court has held that in matters of liquor control, the Twenty-first Amendment[1] confers "something more than the normal state authority over public health, welfare, and morals." (*California* v. *LaRue* (1972) 409 U.S. 109, 114 [34 L.Ed.2d 342, 349-350, 93 S.Ct. 390]; see also *Newport* v. *Iacobucci* (1986) 479 U.S. 92 [93 L.Ed.2d 334, 107 S.Ct. 383]; *New York State Liquor Authority* v. *Bellanca* (1981) 452 U.S. 714 [69 L.Ed.2d 357, 101 S.Ct. 2599].)[2]

The Twenty-first Amendment gives these transcendent powers to the *states,* not to local entities. (See, e.g, *Fillingim* v. *State* (Fla. 1984) 446 So.2d 1099, 1102.) The regulations prohibiting nude dancing upheld in *LaRue* and *Bellanca, supra,* were issued by state agencies vested with authority

---

[1] "The transportation or importation into any State . . . for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." (U.S. Const., 21st Amend., § 2.)

[2] We share the bewilderment of the court in *Intern. Food & Bev. Sys.* v. *City of Ft. Lauderdale* (S.D.Fla. 1987) 664 F.Supp. 482 about the nature and source of this increase in police power. The *Intern. Food* court noted, "Seemingly . . . , the act of returning to the States that which was theirs originally somehow conferred upon them 'something more than normal state authority'—whatever that is. [Citation.] [¶] It is clear that the Twenty-first Amendment returned a power to the States which the States had held for 132 years prior to the adoption of the Eighteenth Amendment. It remains unexplained, however, how the return of a power once held resulted in an increase of that power. This court is indeed puzzled as to how this increase in the general police powers came about." (*Id.,* at p. 484.)

over regulation of liquor in their states. However, a state may choose to delegate its expanded powers under the Twenty-first Amendment to local governments. (*Iacobucci, supra,* 479 U.S. at p. 96 [93 L.Ed.2d at pp. 339-340]; see also *City of Daytona Beach* v. *Del Percio* (Fla. 1985) 476 So.2d 197, 201.) ■ Municipalities may not exercise power under the Twenty-first Amendment unless it has been delegated to them under state law. ■ Warner contends that the California Constitution forbids the state from delegating its Twenty-first Amendment powers to municipalities.

The California Constitution, article XX, section 22, which became effective concurrently with the Twenty-first Amendment, states: "The State of California . . . *shall have the exclusive right and power to license and regulate the manufacture, sale, purchase, possession and transportation of alcoholic beverages within the State. . . .*" (Italics added.) In *Sandelin* v. *Collins* (1934) 1 Cal.2d 147, 151-152 [33 P.2d 1009, 93 A.L.R. 956], the California Supreme Court traced the state's history of liquor regulation. The court noted that before federal prohibition, ". . . the right of regulation of traffic in alcoholic liquors was exercised by the state or under the authority of the state by local legislative bodies and by local option. These rights of regulation were superseded by the federal law and the enactment of the State Prohibition Enforcement Act, commonly known as the Wright Act. (Stats. 1921, p. 79.) The Wright Act was repealed by an initiative measure approved at the general election held on November 8, 1932. At the same election, also as an initiative measure . . . section 22 was added to article XX of the state Constitution. . . ." Article XX, section 22 took effect when the Twenty-first Amendment repealed the Eighteenth Amendment as of December 5, 1933. (*Ibid.*)

■ Under article XX, section 22 the "sale, use and possession of alcoholic beverages is exclusively a matter of state concern and . . . the state will not tolerate local action with respect thereto." (*Cristmat, Inc.* v. *County of Los Angeles* (1971) 15 Cal.App.3d 590, 594 [93 Cal.Rptr. 325].) Thus, the authority of a local entity to regulate entertainment at places licensed by the state to sell alcoholic beverages derives not from article XX, section 22, but from its general police power alone. (*Id.,* at pp. 595-596; *Robins* v. *County of Los Angeles* (1966) 248 Cal.App.2d 1, 7 [56 Cal.Rptr. 853].)

As the California Supreme Court noted in *Crownover* v. *Musick* (1973) 9 Cal.3d 405 [107 Cal.Rptr. 681, 509 P.2d 497], overruled on other grounds in *Morris* v. *Municipal Court* (1982) 32 Cal.3d 553 [186 Cal.Rptr. 494, 652 P.2d 51], "Several Courts of Appeal have reasoned that . . . local ordinances may properly regulate live entertainment in taverns, while the department's [Department of Alcoholic Beverage Control] jurisdiction

remained intact to license the sale of alcoholic beverages. These courts decided that the two types of regulation were independent and distinct, and therefore ordinances relating to the subject of live entertainment did not conflict with the department's powers over the sale of alcohol." (9 Cal.3d at p. 417.)

In contrast to the express reservation of power over the sale and distribution of alcoholic beverages in article XX, section 22, the Kentucky Constitution permits a city to conduct a popular election on a question of local prohibition. (*Iacobucci, supra,* 479 U.S. at p. 94 [93 L.Ed.2d at p. 338].) Moreover, in *Iacobucci* the parties agreed that the City of Newport was "vested with the power to revoke a liquor license upon a finding of a violation of state law, a state liquor regulation, or a city ordinance." (*Id.,* at p. 96 [93 L.Ed.2d at p. 339].) The court noted, "[T]his Court has never attached any constitutional significance to a State's division of its authority over alcohol. The Twenty-first Amendment has given broad power to the States and generally they may delegate this power as they see fit. [¶] There is certainly no constitutional requirement that the same governmental unit must grant liquor licenses, revoke licenses, and regulate the circumstances under which liquor may be sold." (*Ibid.,* fn. omitted.) However, the court did not determine the state law question whether Kentucky had delegated any of its authority to the City of Newport. (*Id.,* at p. 96, fn. 6 [93 L.Ed.2d at p. 339].)

■ The City argues that article XI, section 7 of the California Constitution[3] transfers the state's Twenty-first Amendment powers to local entities. In *City of Daytona Beach, supra,* 476 So.2d 197, the Florida Supreme Court held that a Florida Constitution provision which granted to municipalities the power "to 'exercise any power for municipal purposes except as otherwise provided by law'" imbued the City of Daytona Beach with the state's Twenty-first Amendment powers. (*Id.,* at p. 201.)

■ In California, within the territory it governs, a city's police power under article XI, section 7 "is as broad as the police power exercisable by the Legislature itself." (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140 [130 Cal.Rptr. 465, 550 P.2d 1001].) However, article XX, section 22 reserves exclusively to the state the powers returned to the state with the enactment of the Twenty-first Amendment. (*Sandelin, supra,* 1 Cal.2d at pp. 151-152; *Cristmat, supra,* 15 Cal.App.3d at p. 594.) Article XI, section 7 merely acknowledges the cities' police powers in general. ■ The

_____

[3] "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.)

apparent inconsistency between article XX, section 22 and article XI, section 7 calls into play the rule of statutory construction ". . . that when a special and a general statute are in conflict, the former controls. (Code Civ. Proc., § 1859.) ' "[T]he special act will be considered as an exception to the general statute whether it was passed before or after such general enactment." ' [Citations.]" (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687].) ■ The rules of statutory construction which apply to statutes also apply to the Constitution. (*Hammond* v. *McDonald* (1942) 49 Cal.App.2d 671, 681 [122 P.2d 332], disapproved on other ground in *Covert* v. *State Board of Equalization* (1946) 29 Cal.2d 125, 134 [173 P.2d 545].) ■ Thus, article XX, section 22 carves out an exception to the rule that the cities' police powers are generally as broad as those of the Legislature.

■ We conclude that the State of California has not delegated to local entities its expanded powers under the Twenty-first Amendment; thus, the City's authority to regulate conduct in establishments licensed by the state to sell alcoholic beverages derives solely from the City's general police power. (See *Cristmat, supra,* 15 Cal.App.3d at pp. 595-596.) The City's ordinances in this field are not entitled to any "added presumption" of validity under the Twenty-first Amendment. (See *LaRue, supra,* 409 U.S. at pp. 118-119 [34 L.Ed.2d at pp. 351-352].)

The City argues that neither article XX, section 22 of the California Constitution nor any other state laws preempt local regulation of entertainment at establishments licensed to sell liquor. We agree; Penal Code section 318.5[4] enables local entities to regulate such conduct, and the regulations of the Department of Alcoholic Beverage Control recognize the propriety of local enactments in this area. However, the City's argument misses the point. The issue we decide is not whether localities are preempted from legislating in this area. Rather, assuming that localities are free to regulate, we determine the source of their power derives from the general police power rather than from any delegation of any of the state's Twenty-first Amendment expanded powers.

The City next argues that the California Supreme Court, in *Morris, supra,* 32 Cal.3d 553, did not preclude local regulation of entertainment at places

---

[4] A municipality may adopt ordinances which "directly regulate[ ] the exposure of the genitals or buttocks of or the breasts of any person who acts as a waiter, waitress, or entertainer . . . " in establishments which serve food or beverages for on-premises consumption. (Pen. Code, § 318.5.) The section further states, "The provisions of this section shall not apply to a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances."

where alcoholic beverages are served for on-premises consumption. In *Morris,* the court concluded that a local ordinance which prohibited nonobscene nude dancing and extended beyond establishments serving alcohol was presumptively overbroad. (*Id.,* at p. 564.) While dicta in *Morris* suggest that the court did not see any constitutional distinction between statewide and local legislation in this area, the question whether the state had delegated its Twenty-first Amendment powers to local entities was not presented or addressed. On the basis of our interpretation of article XX, section 22 of the California Constitution, we determine that such delegation would be unconstitutional.

Because the trial court concluded that Ordinance 200-B was valid under the Twenty-first Amendment, the court did not determine whether the City had justified the ordinance under traditional First Amendment analysis. (See, e.g., *Morris, supra,* 32 Cal.3d 553, 565-568; *In re Giannini* (1968) 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535], overruled on other grounds in *Crownover, supra,* 9 Cal.3d at 431.) Thus, we remand to allow the court to make this determination.

## DISPOSITION

The judgment is reversed. The matter is remanded for further proceedings consistent with this opinion.

Campbell, P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied October 5, 1989, and respondent's petition for review by the Supreme Court was denied November 21, 1989.