**DODGER'S BAR AND GRILL,**
d/b/a Bonita Flats Saloon,
et al., Plaintiffs,

v.

**The JOHNSON COUNTY BOARD OF COMMISSIONERS, et al.,**
Defendants.

Civ. A. No. 92–2289–O.

United States District Court,
D. Kansas.

Feb. 17, 1993.

Brock R. Snyder, Law Office of Brock R. Snyder, Topeka, KS, John B. Williams, Robert Beaird, Kansas City, MO, for plaintiffs.

LeeAnne Hays Gillaspie, Johnson County Legal Dept., Olathe, KS, Lawrence L. Ferree, III, Ronald C. Rundberg, Ferree, Bunn & Byrum, Chtd., Overland Park, KS, for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Senior District Judge.

This is an action brought by the plaintiffs, pursuant to 42 U.S.C. § 1983, seeking injunctive relief and declaratory judgment prohibiting the defendants from enforcing the Johnson County Adult Entertainment Code. The case was tried to the court on January 25–26, 1993. The court, having heard the evidence and reviewed the briefs of the parties, makes the following findings of fact and conclusions of law.

*Findings of Fact*

1. Plaintiff Dodger's Bar and Grill, d/b/a Bonita Flats Saloon ("Bonita Flats Saloon" or "the club"), is a Class B private club licensed in Kansas. The club is located in unincorporated Johnson County, Kansas, at 20060 West 175th Street. The primary business of the club is the sale of alcoholic beverages. Entertainment is provided at the club by women such as the individual plaintiffs who perform erotic dancing for club patrons.

2. The dancers perform two types of erotic dances: one type of dance is performed on a stage in front of all the club patrons (a "stage dance"), and the other type at the patron's table (a "table dance" or "lap dance"). The latter involves the performer dancing on or near the lap of a seated patron, and typically the dancer straddles the patron's legs or sits on his lap, permitting the patron to fondle her as she dances. Prior to the enactment of the resolution at issue in this case, usually each dancer would begin a lap or table dance attired in a bikini top and thong bottom. If the customer was responsive (i.e., tipping well), the dancer would remove her top. The dancers permitted table or lap dance customers to fondle their buttocks and touch and kiss their breasts.

3. The only compensation the women receive for their work is tips. The dancers report that their income from tips has decreased since enactment of the resolution.

4. Prior to the enactment of the resolution, undercover law enforcement officers at the Bonita Flats Saloon had observed criminal activity at the club, including drug deals, assaults and batteries, and inappropriate conduct during table dances, such as dancers touching the crotches of male patrons and crotch to crotch contact between dancers and their patrons. Sheriff's officers testified that the club was a law enforcement concern because of the number of calls from the club, often involving assault and battery, in most cases severe, and occasionally involving doormen at the club.

5. In early 1992, the Johnson County Board of Commissioners (the "Board") started receiving complaints about the two existing nude dance clubs in unincorporated Johnson County, the Bonita Flats Saloon and the Platinum Club, from residents of the area around the clubs. The neighbors' complaints included at least one incident of a patron urinating in the parking lot outside the club, club patrons shouting obscenities to passers-by, damage to fences, gates, and other property, and drunk drivers on the roads. Neighbors also told the Board that men leaving the club would follow them in their cars; this was of particular concern to the women who lived in the area because they were most often the ones followed. About the time these complaints were being received, the Board was advised that someone in the Kansas City area had expressed interest to the Johnson County Planning Department in opening a new nude dancing club near Bonita Flats and the Platinum Club.

6. In February 1992, the Board consulted the Johnson County District Attorney and Johnson County Sheriff, seeking their input on the advisability of regulation and their suggestions on what form of regulation, if any, would be appropriate to address the

Board's concerns. The District Attorney and Sheriff agreed with the Board that there needed to be some regulation, especially since most area municipalities had already enacted regulations pertaining to this type of activity, and absent some action, unincorporated Johnson County could become a "safe haven" for nude dancing clubs. The Board was aware of problems associated with similar clubs elsewhere in the Kansas City area because of the attention these clubs were receiving in the media and from local law enforcement authorities. The Board was particularly concerned about public health and safety and the secondary effects (e.g., crime) associated with these clubs. The Board was also made aware of studies that had been conducted in other urban areas pertaining to the secondary effects of topless or nude dancing and other forms of so-called "adult entertainment"; the Board viewed these studies as further evidence that regulations were needed. The Board was also mindful that the area is still developing and needs careful zoning in connection with that growth. Prior to passage of the resolution, the subject was discussed at public meetings of the Board, which were attended by representatives of the plaintiffs and area property owners. At these meetings, area property owners raised some of the same concerns detailed above.

7. On August 6, 1992, the Board adopted Resolutions 67–92 and 68–92, which together comprise the "Adult Entertainment Code." The instant dispute relates only to 67–92, which regulates the performance of erotic dancing in establishments licensed to sell alcoholic beverages. Resolution 68–92 is a zoning statute and is not relevant to this case. In this opinion, the court will refer to 67–92 as simply "the resolution." A copy of 67–92 is attached as Exhibit A.

8. Johnson County Sheriff Allenbrand testified that he understood the resolution and did not anticipate trouble enforcing it. Captain Lewis Hoskins of the Sheriff's Office testified that he had read and understood the resolution and would have no trouble instructing the deputies on what conduct would or would not constitute a violation. Even Jim Baird, manager of the Bonita Flats Saloon, admitted on cross-examination that he understood the terms of the resolution well enough to give the dancers specific instructions on what they were required to wear and what activities were prohibited.

*Conclusions of Law*

The issue presented by this case is whether the Johnson County resolution is unconstitutional on its face. Plaintiffs challenge the constitutionality of the resolution, claiming it violates their First and Fourteenth Amendment rights. Plaintiffs also contend the resolution is unconstitutionally vague and overbroad.

In *California v. LaRue,* the United States Supreme Court considered a constitutional challenge to a California administrative regulation very similar to the resolution at issue in this case. *See California v. LaRue,* 409 U.S. 109, 111–12, 93 S.Ct. 390, 393–94, 34 L.Ed.2d 342 (1972). Like the Johnson County resolution, the California regulation prohibited full nudity, touching or fondling of the breast, buttocks, anus, or genitals, and proscribed the performance or simulation of certain enumerated sex acts. *Id.* The plaintiffs in *LaRue* argued that the regulation unconstitutionally abridged the freedom of expression guaranteed to them by the First and Fourteenth Amendments of the United States Constitution.

The Supreme Court began its analysis by noting that the challenged regulations came to the Court in the context of licensing bars and nightclubs to sell liquor by the drink. *Id.* at 114, 93 S.Ct. at 395. Therefore, the starting point for the Court's analysis was the Twenty-first Amendment, which provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." *Id.* The state has considerable power under the Twenty-first Amendment:

> While the States, vested as they are with general police power, require no specific grant of authority to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than

the normal state authority over public health, welfare, and morals.

*Id.* The Court acknowledged that the California regulation would prohibit some forms of expression protected by the Constitution. Nevertheless, the Court found that the law was constitutional because California had not forbidden such conduct across the board, but only in establishments licensed to sell liquor by the drink. "The Department's conclusion, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have a license was not an irrational one. Given the added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires, we cannot hold that the regulations on their face violate the Federal Constitution." *Id.* at 118–19, 93 S.Ct. at 397.

The Supreme Court had occasion to revisit the *LaRue* holding in deciding the case of *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1980). In that case, the State of New York had amended its alcohol control laws to prohibit nude dancing in establishments licensed to sell liquor for on-premises consumption. The plaintiffs argued that the law was a violation of their First Amendment rights. The Supreme Court picked up the theme from *LaRue,* opening its analysis with an observation that the Court "has long recognized that a State has absolute power under the Twenty-first Amendment to prohibit totally the sale of liquor within its boundaries. It is equally well established that a State has broad power under the Twenty-first Amendment to regulate the times, places, and circumstances under which liquor may be sold." *Id.* 452 U.S. at 715, 101 S.Ct. at 2600 (citation omitted). The Court observed that the elected representatives of the State of New York had "chosen to avoid the disturbances associated with mixing alcohol and nude dancing by means of a reasonable restriction upon establishments which sell liquor for on-premises consumption." The court upheld the constitutionality of the New York law, citing *LaRue:* " 'In *LaRue,* ... we concluded that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, out-

weighed any First Amendment interest in nude dancing and that a State could therefore ban such dancing as part of its liquor license control program.' " *Id.* 452 U.S. at 717, 101 S.Ct. at 2601 (quoting *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932–33, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975)); *see Bellanca,* 452 U.S. at 718, 101 S.Ct. at 2602 ("Whatever artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment.").

The Supreme Court again faced this issue in *City of Newport v. Iacobucci,* 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986). In *Iacobucci,* plaintiffs challenged a Newport, Kentucky, ordinance prohibiting nude or nearly nude dancing in local establishments licensed to sell liquor for consumption on the premises. Plaintiffs asserted that the ordinance deprived them of their rights under the First and Fourteenth Amendments. The district court upheld the ordinance as falling squarely within the doctrine of *Bellanca.* The Supreme Court affirmed, and in doing so, reaffirmed its holdings in *LaRue* and *Bellanca* that the broad power of the States to regulate the sale of liquor outweighed any First Amendment interest in nude dancing, and that a State could therefore ban such dancing as a part of its liquor license program. *Id.* 479 U.S. at 95, 107 S.Ct. at 385. The Court noted that the Newport City Commission, in the preamble to the ordinance, had determined that nude dancing was "injurious to citizens" of the city, and that the ordinance served a broad range of purposes, including "prevent[ing] urban blight and the deterioration of the City's neighborhoods" and "decreas[ing] the incidence of crime, disorderly conduct and juvenile delinquency." *Id.* at 96–97, 107 S.Ct. at 385–86. The Court held that the city's interest in maintaining order outweighed the interest in free expression by nude dancing. *Id.*

█ As illustrated by the foregoing decisions, the Supreme Court has consistently held that the States have authority under the Twenty-first Amendment to enact laws which prohibit nude or partially nude dancing in establishments licensed to sell liquor. The

Supreme Court has made it clear that any First Amendment interest in free expression by nude dancing and the performance of certain sexual acts is overcome by the State's broad powers to regulate the sale of liquor. Accordingly, the court must rule that the Johnson County resolution does not violate the United States Constitution.

The elected officials of Johnson County have chosen to avoid the problems associated with mixing alcohol and nude dancing, including the other proscribed sexual activities, by means of reasonable restrictions upon establishments that are licensed to sell alcohol for on-premises consumption. Although some may quarrel with the wisdom of such legislation and may consider nude dancing and the other prohibited conduct harmless diversions, the Twenty-first Amendment makes that a policy judgment for elected officials, and not the courts. *See Bellanca,* 452 U.S. at 718, 101 S.Ct. at 2602.

■ The court does not agree with plaintiffs' assessment of the resolution as being unconstitutionally vague. The resolution is not so vague that "[people] of common intelligence must necessarily guess at its meaning." *See Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1972). The resolution gives adequate warning of what activities it proscribes and sets out explicit standards for those who must enforce it. *See id.* "Words inevitably contain germs of uncertainty ... but ... 'there are limitations in the English language with respect to both being specific and manageably brief.' " *Id.* at 608, 93 S.Ct. at 2913 (quoting *United States Civil Service Comm'n v. National Assoc. of Letter Carriers,* 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1972)). What the Supreme Court said about the Oklahoma statute at issue in *Broadrick* is equally true of the Johnson County resolution in the instant case: "Although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *Broadrick,* 413 U.S. at 608, 93 S.Ct. at 2914.

■ Likewise, the court does not share the plaintiffs' view that the Johnson County resolution is unconstitutionally overbroad. The overbreadth doctrine allows litigants to challenge a statute not because their own rights have been violated, but on the grounds that the statute's very existence may cause others to refrain from constitutionally protected speech or expression. *Broadrick,* 413 U.S. at 612, 93 S.Ct. at 2916. But even then, "[a]pplication of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort." *Id.* at 613, 93 S.Ct. at 2916. The applicability of this doctrine becomes even more attenuated as the otherwise protected behavior "moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect comprehensive controls over harmful, constitutionally unprotected conduct." *Id.* at 615, 93 S.Ct. at 2917.

■ In *Geaneas v. Willets,* 911 F.2d 579 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1431, 113 L.Ed.2d 484 (1991), the Eleventh Circuit Court of Appeals denied the plaintiffs' overbreadth challenge to a Florida nude dancing ordinance. The ordinance in question was similar to the Johnson County resolution, in that it prohibited the exposure of certain parts of the body and also the performance or simulation of particular enumerated sex acts in any establishment selling alcoholic beverages. The court found that the overbreadth doctrine did not apply:

> As we discuss above, there can be no doubt that the Daytona Beach ordinance constitutes a valid exercise of the City's twenty-first amendment power to ban nude dancing in bars. Such a proscription lies at the core of the City's powers under the twenty-first amendment. The plaintiffs' conduct in the present case, moreover, rests extremely close to this core. Whether or not the ordinance reaches conduct at a distance from these core concerns, the plaintiffs clearly have no standing under *Broadrick* to challenge, on this basis, the ordinance's application to them. The plaintiffs' overbreadth argument lacks foundation.

*Id.* at 584–85. This reasoning applies to the plaintiffs' overbreadth challenge in the instant case. The mere fact that one can conceive of some impermissible applications of the resolution is not sufficient to render it susceptible to an overbreadth challenge. *Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). Accordingly, the court must reject the plaintiffs' contention that the Johnson County resolution is overbroad.

Finally, the court has considered defendants' request for attorney's fees pursuant to 42 U.S.C. § 1988 and concludes that the same should be and hereby is denied.

IT IS THEREFORE ORDERED BY THE COURT that judgment is entered for the defendants on plaintiffs' claim for injunctive relief and declaratory judgment, with costs. Defendants' request for attorney's fees is denied.

### EXHIBIT A

### MINUTES OF THE MEETING OF THE BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS, HELD ON THURSDAY, AUGUST 6, 1992

A regular meeting of the Board of County Commissioners of Johnson County, Kansas was held on Thursday, August 6, 1992, with the following members being present and participating, to-wit:

Chairman Johnna Lingle

Commissioner Bruce R. Craig

Commissioner Murray L. Nolte

Commissioner Sue E. Weltner

WHEREUPON, there came before the Board for consideration the matter of adopting a Resolution enacting regulations for business enterprises which serve alcoholic beverages or cereal malt beverages for consumption on the premises, prohibiting nudity and sexual performances or conduct on the premises, and regulating certain types of conduct within the business establishments.

The Board, after thorough discussion and study, upon a motion duly made, seconded and carried, adopted the following Resolution, to-wit:

### RESOLUTION ENACTING REGULATIONS FOR BUSINESS ESTABLISHMENTS WHICH SERVE ALCOHOLIC OR CEREAL MALT BEVERAGES FOR CONSUMPTION ON THE PREMISES, PROHIBITING NUDITY AND SEXUAL PERFORMANCES, AND REGULATING CERTAIN TYPES OF CONDUCT

Res. No. 067–92

WHEREAS, the Board of County Commissioners, as the governing body for Johnson County, Kansas, has the authority and responsibility to legislate on areas of local concern for the protection of the public health, safety and welfare; and

WHEREAS, the Board of County Commissioners has the power and authority pursuant to K.S.A. 19–101a and 19–101b, pursuant to other applicable laws of the State of Kansas, and pursuant to the general police powers of a municipality to enact regulations for and upon business establishments which serve alcoholic or cereal malt beverages for consumption on the premises located within the unincorporated area of Johnson County, Kansas; and

WHEREAS, Johnson County, Kansas is a part of the Kansas City Metropolitan area, is itself designated as an urban area, has twenty-two incorporated cities, as well as major areas of unincorporated land; and

WHEREAS, the Board and County officials have reviewed studies related to the affects and secondary impacts of various types of business establishments; and

WHEREAS, the Board has found and determined that business establishments which have or provide adult, sexually-oriented entertainment can and do foster or promote incidents of criminal activity, can and do contribute to urban decay and blight, and do create direct exposures to health risks and potential health hazards; and

WHEREAS, the Board and County officials are knowledgeable and aware of the affects and secondary impacts of adult, sexually-oriented entertainment businesses in Kansas City, Missouri, in Wyandotte County

and Kansas City, Kansas, in Shawnee County, Kansas, as well as studies and experiences occurring in Austin, Texas, Indianapolis, Indiana, and Minneapolis, Minnesota, as well as other urban areas; and

WHEREAS, the Board has determined that the regulation of adult, sexually-oriented entertainment businesses in the unincorporated area of Johnson County, Kansas will best serve the public interest and is necessary and advisable for the protection of the public health, safety and welfare.

NOW, THEREFORE, BE IT RESOLVED by the Board of County Commissioners of Johnson County, Kansas that the following Code for the Regulation of Business Establishments shall be and hereby is adopted, and, from and after the effective date of this Resolution, the Code shall apply and be applicable to all business establishments which serve alcoholic beverages or cereal malt beverages for consumption on the premises located within the unincorporated area of Johnson County, Kansas.

## CODE FOR THE REGULATION OF BUSINESS ESTABLISHMENTS

### CHAPTER 1. REGULATION OF BUSINESS ESTABLISHMENTS PROVIDING ADULT ENTERTAINMENT

#### ARTICLE I. PREAMBLE

The Board of County Commissioners, as the governing body of Johnson County, Kansas, has the authority and responsibility to legislate on matters of local concern for the protection of the public health, safety and welfare. Johnson County is located within the Kansas City Metropolitan area, bordering upon the areas of Kansas City, Kansas and Kansas City, Missouri. Those cities have experienced the direct and secondary impacts related to conduct occurring at business establishments which provide adult, sexually-oriented entertainment.

Business establishments which serve alcoholic or cereal malt beverages for consumption on the premises are themselves subject to separate and particular regulation due to the affects of consumption of intoxicating beverages. Conduct at and within those establishments merits appropriate regulation to prevent health risks, to preserve safety, and to minimize criminal activities.

Nudity and sexual performances may be acceptable conduct and entertainment in certain situations and non-public venues. It is not the intent of this Chapter to inhibit the free expression of any art or speech nor to suppress any speech activities protected by the First Amendment of the Constitution.

On the other hand, it is not the intent of the County to condone or legitimize any obscene acts or materials or any illicit or illegal conduct or activity. The intent of this Code is to adopt a content neutral regulation addressing the secondary effects of sexually oriented businesses.

This Chapter is intended to prevent the spread of disease, to promote sanitary health conditions, to prevent opportunities for criminal activity, to preserve property values, and to promote the public morals and welfare.

#### ARTICLE II. TITLE AND APPLICATION

SECTION 1. CITATION. This Chapter is entitled "The Johnson County, Kansas Code for the Regulation of Business Establishments Providing Adult Entertainment" and may be cited as the "Adult Entertainment Code."

SECTION 2. APPLICABILITY. This Chapter shall apply from and after its effective date to all persons and all property located within the unincorporated area of Johnson County, Kansas and shall be applicable to any business establishment, whether licensed or not, now located or hereafter locating within or upon any property located in the unincorporated area of Johnson County, Kansas, which serves alcoholic beverages or cereal malt beverages for consumption on the premises, and to any operator of or entertainer for any such establishment.

SECTION 3. EFFECTIVE DATE. This Chapter shall be and become effective upon its adoption by the Board of County Commissioners and its publication in the official newspaper of the County.

## ARTICLE III. DEFINITIONS

As used in this Chapter, unless the context otherwise requires, the following words or phrases shall have the meaning and be defined as provided in this Article.

A. *Alcoholic beverage* shall mean and include all alcoholic, distilled spirits, wine or fortified wine, or beer, as well as cereal malt beverage.

B. *Entertainer* shall mean any person who performs or presents entertainment at or upon any licensed premises for a fee, tip, compensation or other remuneration, whether as an employee or contractor of the business establishment.

C. *Licensed premises* shall mean any premises on which alcoholic or cereal malt beverages are sold or served for consumption on the premises pursuant to a license or permit issued by the State of Kansas, the County of Johnson or any other political subdivision or agency of the State of Kansas.

D. *Operator* shall mean and include the owner, license holder, manager, person in charge or any person operating any licensed premises.

E. *Patron* shall mean any person who is a guest, member or customer on or in a licensed premises.

F. *Person* shall mean and include any natural person, corporation, partnership, association or any other legally recognized entity.

## ARTICLE IV. PROHIBITED CONDUCT

SECTION 1. Nudity and Sexual Conduct Prohibited.

A. No person shall, on licensed premises, perform acts of or acts which constitute or simulate:

(1) Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law; or

(2) The touching, caressing or fondling of the breast, buttocks, anus, or genitals; or

(3) The displaying of post-pubertal human genitals, buttocks, or pubic area, or the female breast below the top of the nipple.

B. No person shall, on licensed premises, use artificial devices or inanimate objects to perform, simulate or depict any of the prohibited conduct or activities described in paragraph A of this Section.

C. It shall be unlawful for any person to show, display or exhibit, on licensed premises, any film, video, still picture, electronic reproduction or any other visual reproduction or image of any act or conduct described in paragraphs A and B of this Section.

SECTION 2. Allowing Persons to Engage in Prohibited Acts.

A. No operator shall allow or permit to remain in or about the licensed premises any person who performs acts of or acts which constitute or simulate:

(1) Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law; or

(2) The touching, caressing or fondling of the breast, buttocks, anus or genitals; or

(3) The displaying of post-pubertal human genitals, buttocks, or pubic area, or the female breast below the top of the nipple.

## ARTICLE V. VIOLATIONS AND PENALTIES

SECTION 1. VIOLATION ESTABLISHED. It shall be unlawful for any person to fail to comply with any provision of this Chapter or to perform or commit any act prohibited by this Chapter, and the commission of any prohibited act or refusal to comply with any requirement of this Chapter shall be and hereby is declared to be a violation, and each separate act or event shall be and constitute a separate violation.

SECTION 2. PENALTIES. Any person or operator who violates any provision of this Chapter shall be guilty of a Class B misdemeanor, and, upon conviction shall be punishable by a fine in an amount not less than $250.00 and not to exceed $1,000.00, or im-

prisonment in the County jail for a period not to exceed six months or both.

SECTION 3. DECLARATION OF NUISANCE. The violation of any provision of this Chapter by the operator of any licensed premises shall be deemed a public nuisance and shall constitute grounds for the suspension and revocation of any and all alcoholic beverages licenses issued to said premises or to such operator.

## ARTICLE VI. MISCELLANEOUS

SECTION 1. SEVERABILITY. Should any court declare any section, subsection, subparagraph, sentence, clause, or other subdivision of this Chapter to be unconstitutional or otherwise void, such decision shall affect only said section, subsection, subparagraph, sentence, clause, or subdivision and shall not affect any other section, subsection, subparagraph, sentence, clause, or subdivision of this Code.

ADOPTED THIS 6TH DAY OF AUGUST, 1992.

BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS

By /s/ Johnna Lingle
    ·Johnna Lingle, Chairman

ATTEST:

  /s/ Beverly L. Baker
      Beverly L. Baker

  /s/ By Louise Hunter, Deputy

APPROVED AS TO FORM:

  /s/ Don Jarrett
      Don Jarrett, Chief Counsel

  /s/ Paul Morrison
      Paul Morrison, District Attorney