In the Matter of the REVOCATION OF the COUNTY BEVERAGE LICENSE ISSUED TO CIRCLE HOTEL CLUB, INC., Appellant.

No. 52913.

Supreme Court of Oklahoma.

Dec. 2, 1980.

Frank Keating, William C. Kellough, Blackstock, Joyce, Pollard, Blackstock & Montgomery, Tulsa, for appellant.

S. M. Fallis, Jr., Dist. Atty., William R. Edmison, Asst. Dist. Atty., Tulsa, for appellee.

DOOLIN, Judge:

Can a private club have its 3.2 beer license revoked because a waitress and barmaid are convicted of selling alcoholic drinks to two police officers? We answer in the affirmative.

The illegal sale occurred on July 20, 1978, at the Winner's Circle Club, operated by the Circle Hotel Club, Inc. in the Hilton Inn in Tulsa. Three employees were arrested. Charges were dismissed against one and the other two plead guilty for violating 37 O.S. Supp. 1978 § 505, unlawful sale of liquor.

The State sought to revoke defendant's 3.2 beer license under 37 O.S.Supp. 1978 § 163.11(5),[1] violation of state laws commonly called "Prohibition Laws". The trial court upon proper notice revoked the license and the defendant appeals.

I

Defendant argues the state's "Prohibition Laws" were repealed in 1959, and thus cannot form the legal basis for revocation of the license. Defendant contends the term, "Prohibition Laws," refers to a specific statute (37 O.S. 1951 § 1 et seq.) which banned absolutely any trafficking in alcoholic beverages. This absolute ban was replaced with our present statute, 37 O.S.Supp. 1978 § 505, which allows trafficking in limited circumstances, controlled by the Alcoholic Beverage Control Board.

The so–called "Prohibition Laws" (37 O.S. 1951 § 1 et seq.) carries no reference to the phrase "Prohibition Laws," in fact does not even mention the word "prohibit." No statute or case law pointed out to this court contains a definition of "Prohibition Laws."

We agree with plaintiff that the common sense interpretation holds the phrase "Prohibition Laws" refers to that general body of law which regulates the liquor industry in Oklahoma, not to one specific statute. This is particularly true when one notices that the words "commonly called" precedes the phrase "Prohibition Laws" and to our thinking generalizes it; see 37 O.S.Supp. 1978 § 163.11(5). "Commonly called" means the laws which we generally refer to as prohibition laws, and those laws are subject to change. In 1959, the existing "Prohibition Laws" were repealed and another set of "Prohibition Laws" were installed in their place.

1. 37 O.S.Supp. 1978 § 163.11:

"...

A judge of the district court ... shall revoke such permit for any one of the following reasons: ...

(5) Violating any of the laws of the state commonly called 'Prohibition Laws' or violating any of the gambling laws of the state or permitting anyone to violate any of said laws in such places or violating any of the provisions of this act; ..."

Defendant argues that the Oklahoma Alcoholic Beverage Control Act, passed when 37 O.S. 1951 § 1 was repealed, is a statute of "regulation," not "prohibition," and thus cannot be considered "Prohibition Laws." We are not impressed. It can be argued with equal vigor that the new act still "prohibits" sale of liquor, except under certain conditions and restrictions, and thus is in fact a "Prohibition Law."

Defendant would have us believe that when the Legislature passed the present liquor law, 37 O.S.Supp. 1978 § 505 et seq., and used the phrase "Prohibition Laws," it intended to refer to a law which had been repealed by the people in 1959. This we cannot accept. We choose instead to believe the Legislature intended the phrase "Prohibition Laws" to have continued meaning, and refer to the general body of law, not a specific statute. To hold otherwise would mean that 37 O.S.Supp. 1978 § 163.11(5) would have been meaningless the moment it was approved.

Thus we conclude a license may be revoked for violation of the "Prohibition Laws."

## II

A more complicated question arises when attempting to charge the license holder with the actions of his employees.

■ We agree with the State that a license holder may be held responsible for the action of his employees as agents, but only if done with his consent or knowledge.[2] Such a determination is question of fact.

■ Our question: is there sufficient evidence for the Court to rule that the license holder has consented to or had knowledge of the actions of his employees, the waitress and barmaid?

We find there was not such sufficient evidence, and must reverse on that ground.

Defendants stipulated to the convictions of the waitress and barmaid. Neither was called to testify as to whether the employer (the license holder) had knowledge of or condoned the action which resulted in their convictions. Neither was there evidence the license holder had been put on notice (through certified letter or direct communication with the Alcoholic Beverage Control Board Officer, etc.) that his employees were violating the law, and that if such violations continued they would be considered done under his consent or knowledge.

In this case there was simply no evidence that the license holder knew what was going on under his business roof. Negligence or bad business, perhaps, but not enough to hold him legally responsible. It would indeed be easy for this Court to speculate he must have known that illegal sales of liquor–by–the–drink were being made, but our legal system was not founded on speculation; it depends on proof by evidence and such proof is severely lacking in this case.

While we can and will hold the employer responsible for the illegal acts of his employees, such must occur with the knowledge, consent or acquiescence of the employer, either actual or implied. We will not guess. There must be a connection, a nexus, between the violation of the law and the person sought to be punished, however slight.

■ We do not say that once the license holder has been informed that waitress "A" is illegally selling liquor, he cannot have his license revoked when waitress "B" illegally sells liquor. Once he has knowledge that criminal activity is afoot in his business, he is charged with closely monitoring the actions of his employees and knowledge or consent of future illegal activities by any employee can be imputed to him.

The United States Supreme Court, in *Campbell v. Galeno Chemical Co.*, 281 U.S. 599, 50 S.Ct. 412, 74 L.Ed. 1063 (1930) said "the burden to justify closing the business because of some violation of the act or of the regulations is upon the government." The government, in this case, failed to meet that burden.

REVERSED.

---

2.  *Oklahoma Alcoholic Beverage Control Board v. Milam*, 393 P.2d 823 (Okl.1964). *Oklahoma*

*Alcoholic Beverage Control Board v. Welch*, 446 P.2d 268 (Okl.1968).

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, HARGRAVE and OPALA, JJ., concur.