Edward Ameen MISLEH, Appellant,

v.

STATE of Oklahoma, Appellee.

No. M–89–691.

Court of Criminal Appeals of Oklahoma.

Oct. 10, 1990.

J.W. Coyle, III, David T. McKenzie, Coyle & Henry, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Vice–Presiding Judge:

Edward Ameen Misleh, Appellant, was convicted after a bench trial for the crime of Allowing a Dancer to Expose a Breast in a Club Operating Under an Alcoholic Bev-

erage Laws Enforcement License (37 O.S. Supp.1988, § 213.1) in Cleveland County District Court, Case No. M–88–2782. The trial court set punishment at a fine of three hundred dollars ($300.00) and court costs. Appellant raises three propositions of error, that the trial court erred in denying his demurrer, that 37 O.S.Supp.1988, § 213.1 is unconstitutionally overbroad, and that the trial court erred in overruling his motion to suppress statements which the police allegedly obtained in violation of *Miranda.* Finding no trial court error, and finding the statute constitutional, we affirm.

On September 27, 1988, at approximately 9:15 p.m., Norman police officers Francis Pasierb and Charles Daily made a routine bar check at Walter Mitty's. The officers saw a female dancer on stage who appeared to be dancing bare-breasted. Officer Pasierb confronted the dancer after her performance and determined that the areola of her breasts were exposed, in violation of state law. Officer Daily located the appellant who stated he was "in charge", near the front door of the bar. Approximately one week later the appellant was arrested and charged with this crime.

■ The appellant argues that in order to prove criminal liability under 37 O.S. Supp.1988, § 213.1 the State must prove that he knew the dancer was exposing herself. He asserts the State did not prove this element and thus, his demurrer to the evidence should have been granted. Appellant relies on *Matter of Revocation of County Bev. License,* 620 P.2d 395 (Okl. 1980) to support his position.

In pertinent part 37 O.S.Supp.1988, § 213.1 provides:

No ... manager, or person having supervisory control of any establishment licensed to sell non-intoxicating beverages shall permit ...

3. Any person on the licensed premises while such person is unclothed or in such attire, costume or clothing as to expose to view any portion of the areola of the female breast ...

■ To determine whether knowledge is an element of the offense which must be

proven by the State we will follow the cardinal rule of statutory construction and look to the plain language of the statute. *See Ledbetter v. Alcoholic Bev. Laws Enforcement,* 764 P.2d 172, 179 (Okl.1988). The statute by its clear language places an affirmative duty on the manager or person having supervisory control of a licensed establishment not to permit the enumerated unlawful acts. Failure to perform this duty is the defined offense. In the present case the appellant was present in the bar in a place from which he could have seen the stage, and he did not perform his statutory duty. The appellant thereby committed the misdemeanor with which he was charged.

Appellant's reliance on *Matter of Revocation of County Bev. License* is misplaced. In that case the Oklahoma Supreme Court looked to agency principles to determine whether the illegal acts of two employees of a private club, selling liquor by the drink, could be imputed to the license holder in order to revoke his beverage license. The Court held that the acts of the employees could be imputed to the license holder/employer only if the employees acted with his knowledge or consent. 620 P.2d at 397.

This reasoning does not support the appellant's position. The acts of the dancer are not being imputed to the appellant, rather he is charged with failing to perform his own statutory duty. The State presented sufficient evidence to establish the elements of this crime, and the trial court properly denied Appellant's demurrer.

■ Appellant next argues that 37 O.S. Supp.1988, § 213.1 is unconstitutionally overbroad. He claims that the statute could operate to prohibit speech protected by the First Amendment such as nude artistic performances in Oklahoma theaters licensed to sell 3.2 beer. He also argues that the statute sweeps too broadly because "current trends in summertime fashions" being what they are, the manager of an establishment, such as the 89er Stadium in Oklahoma City, could be exposed to liability for the revealing apparel worn by baseball fans.

■ Initially we find that although the appellant does not allege the statute was necessarily overbroad in order to apply to him, he has standing to raise this constitutional challenge. *See NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830, 840 (1973). This exception to the usual rules governing standing has been explained by the Supreme Court:

> We give a defendant standing to challenge a statute on grounds that it is facially overbroad, regardless of whether his own conduct could be regulated by a more narrowly drawn statute, because of the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application. (quotation and citation omitted).

*Bigelow v. Virginia,* 421 U.S. 809, 816, 95 S.Ct. 2222, 2230, 44 L.Ed.2d 600, 608 (1975).

■ There is no doubt at this time that the Fourteenth Amendment requires that state law may not erode the protections guaranteed by the First Amendment. *See Bigelow,* 421 U.S. at 811, 95 S.Ct. at 2227, 44 L.Ed.2d at 605 (1975). The Supreme Court has explained that a statute is unconstitutionally overbroad in the First Amendment context if it purports to reach protected as well as unprotected speech. *See Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830, 840 (1973).

■ The appellant does not direct us to any authority which suggests that the wearing of revealing fashions by fans at a sporting event is constitutionally protected speech. Nor does he support his bald speculation that Section 213.1 would be applied to spectators at a sporting event. To have standing to assert the claim of the stadium manager, the appellant must show more than allegations of a subjective "chill" to protected speech; there must be a claim of specific present objective harm or a threat of specific future harm. *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154, 166 (1972). As he fails to

show both that the possible exposure is protected speech or expressive conduct, and a specific or future harm, we find no merit to this portion of his argument.

The appellant properly recognizes that under the Twenty-first Amendment the State has the broad power to regulate the sale of alcoholic beverages, and that this power includes the authority to ban the sale of liquor on premises where topless dancing occurs. *See New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981). In *Bellanca* the United States Supreme Court considered a New York statute which is quite similar to 37 O.S.Supp.1988, § 213.1. The New York statute provides:

> No retail licensee for on-premises consumption shall suffer or permit any person to appear on licensed premises in such manner or attire as to expose to view any portion of the pubic area, anus, vulva, or genitals, or any simulation thereof, nor shall suffer or permit any female to appear on licensed premises in such manner or attire as to expose to view any portion of the breast below the top of the areola, or any simulation thereof.

N.Y.Alco.Bev.Cont.Law, § 106, subd. 6–a (McKinney Supp. 1980-1981). *See Bellanca* 452 U.S. at 714, 101 S.Ct. at 2600, 69 L.Ed.2d at 359. In *Bellanca*, however, the question of overbreadth was not before the Court and the Court did not raise it *sua sponte*.

■ The overbreadth doctrine, which has been employed by the Supreme Court, "sparingly and only as a last resort", is not invoked when a limiting construction has been or could be placed on the challenged statute. *Broadrick v. Oklahoma*, 413 U.S. at 613, 93 S.Ct. at 2916, 37 L.Ed.2d at 841. In the present case we need not and do not conclude that 37 O.S.Supp.1988, § 213 is overbroad. The statute has been construed, in such a way that it is not to be used to prohibit artistic theatrical performances which are protected by the First Amendment.

The dance which led to the arrest in the instant case may well have had some artis-

tic or communicative value entitling it to First and Fourteenth Amendment protection. *See New York State Liquor Authority v. Bellanca*, 452 U.S. at 718, 101 S.Ct. at 2602–2603, 69 L.Ed.2d at 361. However, we find that this value is outweighed by the State's power to regulate the sale of alcoholic and non-alcoholic beverages under the Twenty-first Amendment. *See Id.* We find therefore, that Section 213.1 is not facially overbroad, and that it was properly applied to the appellant.

■ As his final proposition the appellant claims that the trial court should have granted his motion to suppress his statement that he was "in charge" of the club. He claims he was subjected to custodial interrogation in violation of his rights set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Officer Daily explained very clearly the events which led up to the appellant's statement:

> I went to the disc jockey's booth and the front area where the person who's in charge of the door was at in order to find the manager or the owner, whoever was in charge of the bar at that time. That is who I asked for. At that time Mr. Misleh came towards me and said, "Well, I'm in charge". And I asked him again, are you in charge of the bar or are you the owner or something to that effect. He replied in the affirmative manner that yes, he was in fact the person who was in charge of the bar. I said, okay, I need to get some information from you ... (Tr. 49).

■ Police officers are not required to give the *Miranda* warnings to every person they question. *Casey v. State*, 732 P.2d 885 (Okl.Cr.1987); *Edge v. City of Oklahoma*, 760 P.2d 836 (Okl.Cr.1988). An investigative stop, in which the police conduct minimal investigation to determine whether probable cause exists to believe a crime has been committed, does not require *Miranda* warnings. *See Castellano v. State*, 585 P.2d 361 (Okl.Cr.1978); *Casey*, 732 P.2d at 887; *Edge*, 760 P.2d at 838.

The distinction between an investigative stop and an arrest is one of degree; the investigative stop must be limited in scope and duration. See *Castellano v. State*, 585 P.2d 361 (Okl.Cr.1978); *United States v. Sharp*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

The stop in the present case was extremely brief in both scope and duration. The only information Officer Daily obtained from the appellant inside the club was that he was "in charge". After obtaining this information Officer Daily asked the appellant to step outside where they could talk. Both the officers then ascertained he was "in charge" and informed him of the misdemeanor which they had observed. The appellant supports his argument with the following testimony of Officer Daily on cross-examination:

Q: Prior to the time you determined who he was, was he free to go?

A: No. (Tr. 53).

However, immediately preceding this testimony Officer Daily testified:

A: All we were determining is who he was.

Q: Was he free to go—

A: After we determined who he was, yes.

(Tr. 53).

The brief conversation which the officers had with the appellant, as well as the initial questioning which took place inside Walter Mitty's was limited in both scope and duration, and did not significantly interfere with the appellant's freedom of movement. The officers made no attempt at that time to formally arrest him. We find that when the police questioned the appellant they were conducting an investigatory stop which did not require the *Miranda* warnings. The trial judge thus properly admitted the resulting evidence. Finding no error which warrants reversal or modification, we AFFIRM the judgment and sentence of the trial court.

PARKS, P.J., and BRETT, J., concur.

LUMPKIN and JOHNSON, JJ., concur in result.

LUMPKIN, Judge, concurring in results:

I concur in the results reached by the Court. However, I would just emphasize that the United States Supreme Court has previously interpreted statutes like the one before us today. In so doing, they have been upheld as constitutional. In *City of Newport v. Iacobucci*, 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334, *rehearing denied* 479 U.S. 1047, 107 S.Ct. 913, 93 L.Ed.2d 862 (1986), the Court held a Kentucky city ordinance which banned nude or nearly nude dancing in local establishments licensed to sell liquor for consumption on the premises constitutional, relying on the reasoning set forth in an earlier New York case. In that case, *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981), the Court held constitutional a statute which banned nude dancing in establishments licensed to sell liquor by the state. In *Bellanca* the New York Supreme Court had declared the statute unconstitutional, reasoning that "... topless dancing was a form of protected expression under the First Amendment ..." *Bellanca*, at 715, 101 S.Ct. at 2600. However, the Supreme Court of the United States noted that "[a] state has broad power under the Twenty-first Amendment to regulate the times, places, and circumstances under which liquor may be sold." *Id.* The Court went on to say that:

Although the customary 'barroom' type of nude dancing may involve only the barest minimum of protected expression, we recognized in *California v. LaRue*, 409 U.S. 109, 118, [93 S.Ct. 390, 397, 34 L.Ed.2d 342] (1972), that this form of entertainment might be entitled to First and Fourteenth Amendment protection under some circumstances.

*Bellanca*, 452 U.S. at 716–717, 101 S.Ct. at 2601.

In *LaRue* the Court determined that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, "outweighed any First Amendment interest in nude dancing and that a State could therefore ban such danc-

ing as part of its liquor license control program." *Id.* at 717, 101 S.Ct. at 2601. (Emphasis added.) The Court went further to explain that "[p]ursuant to its power to regulate the sale of liquor within its boundaries, it has banned topless dancing in establishments granted a license to serve liquor. The State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs." *Bellanca* at 717, 101 S.Ct. at 2601. And "[w]hatever artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment ... the Twenty-first Amendment makes that a policy judgment for the state legislature, not the courts." *Bellanca* at 718, 101 S.Ct. at 2602.

It should also be noted that a review of First Amendment claims must also distinguish between words and acts. This distinction was reiterated by the Supreme Court in *LaRue.*

> But as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases. States may sometimes proscribe expression that is directed to the accomplishment of an end that the State has declared to be illegal when such expression consists, in part, of 'conduct' or 'action,' *Hughes v. Superior Court,* 339 U.S. 460, 94 L.Ed. 985, 70 S.Ct. 718 (1950); *Giboney v. Empire Storage Co.,* 336 U.S. 490, 93 L.Ed. 834, 69 S.Ct. 684 (1949). In *O'Brien, supra,* ·[*United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) ] the Court suggested that the extent to which 'conduct' was protected by the First Amendment depended on the presence of a 'communicative element,' 'We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express

> an idea.' 391 U.S., at 376 [88 S.Ct. at 1678], 20 L.Ed.2d 672.

409 U.S. at 117, 118, 93 S.Ct. at 396, 397.

The case before us today is not unlike that of *Bellanca* or *Iacobucci* and because the Supreme Court of the United States has interpreted the Twenty-first Amendment as encompassing a State's authority to ban nude dancing in establishments licensed by the State to sell liquor, I agree with the Court that the statute in question is constitutional under the analysis of the Supreme Court's decisions.

Appellant's allegation that he should have received "Miranda" warnings is totally without merit. The Appellant was not in-custody when the police officer asked who was "in charge." The requirements of the *Miranda* warnings are directed to custodial interrogations. *Miranda v. Arizona,* 384 U.S. 436, 477, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694, 725 (1966). *See also, Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). The questioning was in the form of a *Terry* type investigatory procedure and fails to rise to the level of interrogation. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In the recent case of *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), the Supreme Court stated:

> The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures. The authority and limits of the Amendment apply to investigative stops ...

*Id.* at 682, 105 S.Ct. at 1573. (emphasis added)

It was in *Terry* that the Court adopted a dual inquiry for evaluating the reasonableness of an investigative stop. The Court will examine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20, 88

S.Ct. at 1879. The brief detention of Appellant to answer the officer about who owned or managed the club clearly was limited in scope and duration and at no time significantly interfered with Appellant's freedom. The officer's action was both justified and limited in scope and clearly met the Fourth Amendment's standard of reasonableness.