949 F.2d 382
 DIVERSIFIED NUMISMATICS, INC. Richard Eargle, Plaintiffs-Appellants,
v.
CITY OF ORLANDO, FL., Bill Frederick, Mayor, Bill Frederick,
individually, Dan Wilson, as Chief of Police, Dan
Wilson, individually, Defendants-Appellees.
 No. 90-3914
 Non-Argument Calendar.
United States Court of Appeals,
Eleventh Circuit.
 Dec. 27, 1991.
 
 Appeal from the United States District Court for the Middle District of Florida.
 Before HATCHETT, Circuit Judge, JOHNSON* and CLARK *, Senior Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellants challenge the district court's refusal to recuse and its grant of summary judgment to the defendants/appellees. We affirm.
 
 
 2
 As a preliminary matter, we note that appellees have moved to strike certain portions of appellants' brief and for sanctions, because the brief refers to newspaper articles not presented to the district court. We agree that appellants should not have referenced material not in the record, and we will not consider any non-record evidence or arguments based upon non-record evidence. However, appellees also committed serious error in their brief, by failing to cite clearly controlling circuit precedent on the issue of the appealability of judicial recusal decisions.[1] We have determined not to sanction either party in light of the errors committed by each.
 
 I. RECUSAL
 
 3
 Appellants moved pursuant to 28 U.S.C. § 455(a) for the recusal of the two district court judges in the Middle District of Florida, Orlando Division, based on the fact that the district court judges had previously recused themselves in several cases in which appellants' attorney acted as counsel.[2] Although the case was originally assigned to the Honorable Patricia C. Fawsett, Judge Fawsett transferred the case to the other Orlando district court judge, the Honorable G. Kendall Sharp, who had presided over earlier, related litigation.[3] Judge Sharp denied appellants' motion for recusal.[4]
 
 
 4
 Appellants correctly discuss that in this circuit the district court judge's refusal to recuse may be complained of on appeal from final judgment.[5] A district court judge's refusal to recuse pursuant to section 455(a) is subject to review for abuse of discretion.[6] The test for recusal under section 455(a) is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality."[7] Our precedents further hold that "an appellate court ... should determine the disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party rather than counsel."[8] Other courts have remarked that "[b]ias against an attorney is not enough to require disqualification under section 455 unless petitioners can show that such a controversy would demonstrate a bias against the party itself."[9]
 
 
 5
 Here, appellants' counsel had asked for the recusal of Judge Sharp in previous cases, based upon counsel's allegations that Judge Sharp harbored personal biases against Blacks and Jews. Judge Sharp recused himself from three cases in which counsel was involved, stating that he was recusing himself only because of his feeling that he might be biased against counsel due to counsel's unprofessional conduct. Appellants argue that Judge Sharp is obligated by his prior recusals to disqualify himself from all further cases in which appellants' counsel is involved.
 
 
 6
 We find no merit in appellants' contention. Even were we to accept (which we do not) appellants' allegations of anti-minority bias, appellants have not claimed that they are themselves members of a racial or religious minority. Thus, no bias against a party has been shown. Although it is conceivable that a judge could harbor such ill-will toward an attorney that the attorney's clients would also be prejudiced, we have not been pointed to any evidence of a continuing bias on the part of Judge Sharp. This court has already rejected an assertion similar to that made by appellants: "Lawyers, once in controversy with a judge, would have a license under which the judge would serve at their will."[10] Tempers do cool, and anger does dissipate. Prior recusals, without more, do not objectively demonstrate an appearance of partiality.[11] We will not disturb the district court's refusal to recuse.
 
 II. SUMMARY JUDGMENT
 
 7
 Appellants are a corporation engaged in coin dealing and that corporation's president. They challenged in the district court the constitutionality and enforcement of the Orlando precious metals ordinance, Orlando City Code §§ 43.54-.59. In general, the ordinance requires that dealers buying previously owned items containing gold, silver, or platinum (such as flatware or jewelry) from the public must record information about the sellers of such items and report descriptions of such items to the police. The ordinance exempted certain items from its purview, including coins with an intrinsic value less than their numismatic value. Appellants claimed that the ordinance was unconstitutional and was being enforced in violation of 42 U.S.C. § 1983. Appellants sought declaratory, injunctive, and monetary relief.
 
 
 8
 A previous version of the ordinance had been enjoined from enforcement as being unconstitutionally vague.[12] Appellants alleged that the changes made in enacting the present version of the ordinance did not render it constitutional and that the ordinance was being enforced discriminatorily and arbitrarily against them. Because appellants had not been charged under the ordinance, the district court construed appellants' complaint as only alleging a pre-enforcement facial challenge to the ordinance. The district court found that the revised ordinance corrected the defects of the original ordinance and granted summary judgment in appellees' favor.
 
 
 9
 Because appellants have not clearly set out the grounds on which they challenge the district court's order but instead have criticized seriatim each of the district court's determinations, we have not followed appellants' order of presentation of the issues. Appellants appear to question the district court's grant of summary judgment on the grounds that (1) the ordinance is unconstitutional; (2) the ordinance has been enforced improperly against them and will be enforced improperly against them in the future; and (3) the district court should not have dismissed appellants' pendent state law claims.
 
 A. The Constitutionality of the Ordinance
 1. Overbreadth
 
 10
 Appellants appear to challenge the district court's determination that the ordinance is not overbroad. The Supreme Court has stated, "In a facial challenge to the overbreadth ... of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail."[13] Appellants contend that the ordinance interferes with their "right of association."[14] However, appellants do not elaborate on this contention. We do not understand how the ordinance, which simply requires the reporting of certain secondhand goods transactions, could limit appellants from associating with others. And the ordinance clearly does not reach "a substantial amount of constitutionally protected conduct," because it does not restrict any activities traditionally regarded as protected.
 
 2. Void-for-Vagueness
 
 11
 Appellants object to the ordinance on vagueness grounds because of the ordinance's definition of "precious metals" and "precious metals dealers." The ordinance defines "precious metal" as
 
 
 12
 any item containing any gold, silver, or platinum, or any combination thereof, excluding: (a) Any chemical or any automotive, photographic, electrical, medical, or dental materials, or electronic parts. (b) Any coin with an intrinsic value less than its numismatic value. (c) Any gold bullion coin. (d) Any gold, silver, or platinum bullion that has been assayed and is properly marked as to its weight and fineness.[15]
 
 
 13
 The ordinance defines a "precious metals dealer" as
 
 
 14
 any person who buys used precious metal for resale excluding: (a) Any person, firm or corporation the principal business of which is the retail sale of new goods and which accepts for trade-in previously owned precious metal in a transaction involving the sale of new goods, provided the traded-in precious metal was originally purchased from that person, firm or corporation.[16]
 
 
 15
 To state a void-for-vagueness claim, appellants must show that the ordinance does not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited" or that it "encourage[s] arbitrary and discriminatory enforcement."[17] Furthermore, because the Orlando ordinance has yet to be applied against appellants, they must show that the ordinance "is impermissibly vague in all of its applications."[18]
 
 
 16
 At the outset, we note that the ordinance clearly requires that secondhand dealers report their purchases of items such as jewelry and flatware. Because at least one clear application of the ordinance exists, appellants' facial vagueness claim must fail. We nevertheless address appellants' specific vagueness claims, as best as we are able to interpret them.
 
 
 17
 As to the vagueness of the definition of "precious metals," appellants seem to complain that the ordinance does not exclude coins mounted in jewelry settings, whereas the Florida statute governing precious metals excludes such items.[19] However, Orlando is free to enact more stringent regulations than the state of Florida.[20] And the bare fact that Florida chose to exempt coins mounted in jewelry settings does not show that any other regulation is ipso facto vague. Appellants also may be taken to complain that the ordinance does not make clear the amount of metal necessary to be considered precious, even though the district court found in its decision concerning the previous Orlando ordinance that that ordinance was vague due to the failure to define the amount of metal necessary to trigger the ordinance.[21] However, the previous ordinance was vague in these respects only because it was not enforced against jewelers; the words of the ordinance at issue are clear that all items containing any precious metals are required to be registered unless they fall into certain excepted categories. As we have been pointed to no evidence that the ordinance is not being enforced against jewelers, we must assume that the law will be applied as it is written and fail to see how the plain words of the definition allow standardless enforcement.
 
 
 18
 As to the vagueness of the definition of "precious metal dealers," appellants argue only that the ordinance is being discriminatorily enforced.[22] However, this court has held, "Regardless of the risk of discriminatory enforcement, the [plaintiffs] may raise this claim only in a post-enforcement proceeding when the possibility of selective enforcement has 'ripen[ed] into a prosecution.' "[23] Moreover, discriminatory enforcement does not necessarily mean that the ordinance that is being enforced is itself void-for-vagueness. The most clearly stated law against running red lights conceivably could be enforced discriminatorily by the police, if they so chose. To state a void-for-vagueness claim, the language of the ordinance itself must be vague, and appellants have failed to point to any specific aspects of the wording of the ordinance that are insufficiently definite.[24] We conclude that appellants have not shown that the ordinance is vague in any sense.
 
 3. Coin Dealing As a Fundamental Right
 
 19
 Appellants appear to argue that the ordinance is unconstitutional because it fails to provide an exception for coin dealers.[25] However, the principal case cited by appellants in support of their argument that an exception should be created actually permits a very similar regulation of all secondhand dealers, including those who deal in precious metals.[26] Although some courts have found that precious metal dealers have not traditionally been subject to the same degree of regulation as dealers in liquor and firearms,[27] these distinctions were drawn in the context of fourth amendment challenges to laws permitting warrantless inspections of precious metal dealers' businesses.[28] The Orlando ordinance does not authorize such inspections.
 
 
 20
 Even were coin dealers entitled to greater freedom from regulation in conducting their businesses than others, the challenged Orlando ordinance does not in any way prevent appellants from conducting their trade in coins. Orlando City Code § 43.54(1)(b) specifically excepts coins with an intrinsic value less than their numismatic value from regulation. Orlando City Code § 43.54(1)(c) specifically excepts gold bullion coins. The ordinance thus does not require appellants to report their transactions in collectible coins. It merely requires appellants to report transactions of items such as flatware and jewelry. In other words, the ordinance only regulates appellants when appellants are not acting as coin dealers but as secondhand goods dealers generally.
 
 
 21
 In an argument related to the one just discussed, appellants seem to maintain that they have a right to privacy in their business transactions greater than that traditionally afforded to other businesses and that the ordinance interferes with their fundamental right to engage in coin dealing.[29] It goes almost without saying that there is no fundamental right to engage in coin dealing. Orlando's ordinance need only withstand analysis under the rational basis test, used for economic regulation. We fail to see in what way appellants could show that the ordinance is not rationally related to a legitimate governmental interest, as Orlando clearly has an interest in halting transfers of stolen goods.
 
 
 22
 In summary, appellants have not shown that the Orlando ordinance (which appears fairly innocuous to us) is unconstitutional on any ground.
 
 B. Enforcement of the Ordinance
 
 23
 Appellants maintain that the district court incorrectly construed their complaint as only alleging "a pre-enforcement facial challenge"[30] to the precious metals ordinance enacted by the City of Orlando. Appellants argue that they have also complained of possible future attempts by Orlando to enforce the ordinance discriminatorily and arbitrarily by entrapping them into violations of the ordinance and that a prior instance of attempted entrapment by Orlando demonstrates Orlando's determination to enforce the precious metals ordinance discriminatorily and arbitrarily. Appellants maintain that this allegation creates a genuine issue of material fact that makes summary judgment inappropriate.[31]
 
 
 24
 The district court found that appellants "have shown some actual injury as a result of an alleged investigation of them by defendants."[32] The district court determined that appellants had rejected certain precious metals transactions out of fear of being arrested for violation of the ordinance. The district court also noted that appellants had submitted affidavits showing that they were threatened with enforcement of the ordinance. The district court ruled that these facts gave appellants standing to challenge the ordinance. We note that it was not necessary for appellants to have been harmed in order for them to make a pre-enforcement challenge to the constitutionality of the ordinance.[33] However, allegation of injury is a necessary component of appellants' section 1983 discriminatory and arbitrary enforcement claims.
 
 
 25
 The district court did not err in considering appellants' complaint as only alleging a pre-enforcement challenge to the ordinance. Appellants' claims that the ordinance has been and will be enforced discriminatorily and arbitrarily against them are premature, because they have yet to suffer any injury. No "genuine issue" therefore exists for resolution by a factfinder.
 
 
 26
 As to the alleged past efforts at enforcement or entrapment: appellants have not been charged with any violations of the ordinance, and they have suffered no discernible injury from the alleged discriminatory and arbitrary enforcement.[34] Moreover, we have examined the depositions and briefs carefully and can find no support for appellants' assertion that the ordinance has been enforced discriminatorily and arbitrarily. Appellants specifically argue that two depositions support their claims of discriminatory and arbitrary enforcement.[35] Appellants point to the deposition of a police officer assigned to enforce the ordinance as evincing improper enforcement of the ordinance. However, the officer deposed that over forty businesses provided the information required by the ordinance voluntarily, that at one time he requested that appellants provide the same information but that appellants refused, and that he had taken no action whatsoever against appellants for their refusal to comply with the ordinance.[36] From the officer's deposition, it appears that other secondhand goods dealers might have a claim of discriminatory enforcement, but not appellants. Appellants also point to the deposition of the police chief as evidencing discriminatory and arbitrary enforcement, but we could not discern any relevant information therein.
 
 
 27
 The record thus shows that the ordinance at issue has been used to obtain information from numerous businesses in the Orlando area. Appellants have not pointed to any evidence that there are other businesses who refuse to comply with the ordinance and who have not been subject to attempts to enforce the ordinance. If appellants' business is the only business that refuses to comply with the ordinance, the police would certainly be justified in singling out appellants' business for compliance checking. That appellants may have been subject to an enforcement attempt does not show in any way that such enforcement was discriminatory or arbitrary.
 
 
 28
 As to possible future attempts at enforcement: Appellants simply have not shown that the threatened injury they complain of is sufficiently ripe for judicial resolution.[37] Because appellants have not been formally charged with violations of the ordinance, appellants have not shown any evidence that they are "immediately in danger of sustaining some direct injury as the result of the challenged official conduct" or that the threat of injury is both "real and immediate, not conjectural or hypothetical."[38] It is entirely hypothetical that appellants will violate the precious metals ordinance in the future. We assume that appellants "will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed"[39] by the City of Orlando. In fact, the president of appellant Diversified Numismatics, appellant Richard Eargle, deposed that Diversified is in compliance with the ordinance because it does not at present purchase from the public any of the items regulated by the ordinance.[40] According to Eargle's statement, appellants are not in any danger of being caught in or entrapped into a violation of the ordinance by any efforts of the Orlando police. Appellants therefore have not presented a controversy that is sufficiently ripe for a court to adjudicate. Speculation is not sufficient to support an injunction against a contingency as remote as possible future attempts to enforce a valid ordinance.
 
 
 29
 We conclude that summary judgment was appropriate as to all of appellants' claims.
 
 III. PENDENT STATE CLAIMS
 
 30
 Because the district court properly granted summary judgment as to appellants' federal claims, the district court's dismissal of appellants' pendent state law claims was also correct.
 
 IV. CONCLUSION
 
 31
 The heart of appellants' complaint seems to be that they feel they should be exempt from reporting requirements designed to intercept the flow of stolen goods simply because they are coin dealers. But appellants fail to acknowledge that, to the extent that they are coin dealers, they are exempt from the operation of the challenged ordinance. We do not understand in what way appellants' status as numismatists should elevate them over other citizens engaged in the secondhand goods trade.
 
 
 32
 AFFIRMED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals of the Eleventh Circuit
 
 
 [1]
 See red brief, at 8-11. But see text accompanying note 5
 
 
 [2]
 R1-4 ("[The recusal] motion is made to assure the appearance of justice, since each judge in 1988 recused himself or herself from all of the cases in which Gabe Kaimowitz then was involved in federal court. He is Plaintiffs' attorney. As in the instant matter, in two of those cases, a defendant is the City of Orlando. In each of those cases, Judge Sharp has recused himself, because he stated he might be biased against Kaimowitz.")
 
 
 [3]
 R1-5
 
 
 [4]
 R1-6
 
 
 [5]
 See In re Corrugated Container Antitrust Litig., 614 F.2d 958, 960-61 (5th Cir.) ("Disqualification questions are fully reviewable on appeal from final judgment." (citations omitted)), cert. denied, 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980)
 
 
 [6]
 Giles v. Garwood, 853 F.2d 876, 878 (11th Cir.1988), cert. denied, 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989)
 
 
 [7]
 Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir.1988) (citation and footnote omitted), cert. denied, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989)
 
 
 [8]
 Davis v. Board of School Comm'rs, 517 F.2d 1044, 1052 (5th Cir.1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976)
 
 
 [9]
 In re Beard, 811 F.2d 818, 830 (4th Cir.1987) (citations omitted); see also Davis, 517 F.2d at 1051 ("[T]here could be a case where the cause of the controversy with the lawyer would demonstrate bias of such a nature as to amount to a bias against a group of which the party was a member--e.g., all Negroes, Jews, Germans, or Baptists. This then would be bias of a continuing and 'personal' nature over and above mere bias against a lawyer because of his conduct.")
 
 
 [10]
 Davis, 517 F.2d at 1050
 
 
 [11]
 Cf. Gilbert v. City of Little Rock, 722 F.2d 1390, 1398-99 (8th Cir.1983) (upholding district court's refusal to recuse where district court judge had previously recused in cases involving appellants' counsel), cert. denied, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984)
 
 
 [12]
 Diversified Numismatics, Inc. v. City of Orlando, 615 F.Supp. 141 (M.D.Fla.1985)
 
 
 [13]
 Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnotes omitted)
 
 
 [14]
 Blue brief, at 24
 
 
 [15]
 Orlando City Code § 43.54(1)
 
 
 [16]
 Orlando City Code § 43.54(2)
 
 
 [17]
 Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)
 
 
 [18]
 Village of Hoffman Estates, 455 U.S. at 497, 102 S.Ct. at 1193. Although appellants claim that the ordinance has been applied against them because they have allegedly been subject to entrapment efforts by the police, appellants cannot predict which aspects of the ordinance they may be entrapped into violating prior to the bringing of formal charges against them. Therefore, appellants must show that all possible applications of the ordinance are void-for-vagueness
 
 
 [19]
 Fla.Stat. § 538.03(1)(i)(5) (Supp.1990)
 
 
 [20]
 See Fla.Stat. § 538.17 ("Nothing in this chapter shall preclude political subdivisions of the state and municipalities from enacting laws more restrictive than the provisions of this chapter.") (1989)
 
 
 [21]
 See Diversified Numismatics, Inc., 615 F.Supp. at 147; blue brief, at 28
 
 
 [22]
 See blue brief, at 26-28
 
 
 [23]
 Florida Businessmen for Free Enterprise v. City of Hollywood, 673 F.2d 1213, 1220 (11th Cir.1982) (citation omitted and emphasis added)
 
 
 [24]
 Cf. Mid-Fla Coin Exchange, Inc. v. Griffin, 529 F.Supp. 1006, 1028-30 (M.D.Fla.1981) (discussing specific aspects of vagueness in language of state statute regulating secondhand dealing in precious metals). We also note that the narrowly tailored language of the Orlando ordinance appears specifically designed to meet the objections raised by the district court in Mid-Fla Coin Exchange, Inc
 
 
 [25]
 See blue brief, at 26-28
 
 
 [26]
 See Peterman v. Coleman, 764 F.2d 1416, 1421 (11th Cir.1985)
 
 
 [27]
 See, e.g., Mid-Fla Coin Exchange, Inc., 529 F.Supp. at 1026
 
 
 [28]
 See id. at 1420-21
 
 
 [29]
 See id. at 27 ("[F]undamental rights in fact may be involved....")
 
 
 [30]
 R2-67-2 n. 1
 
 
 [31]
 Blue brief, at 22-23; Grey brief, at 2-9
 
 
 [32]
 R2-67-5
 
 
 [33]
 Cf. Village of Hoffman Estates, 455 U.S. at 491, 102 S.Ct. at 1189
 
 
 [34]
 Appellants claim that they have been injured because they have stopped conducting transactions with certain customers selling dental gold as a result of Orlando's alleged undercover attempts to monitor appellants' compliance with the ordinance. See R2-58-27-29. But it is difficult to understand why this injury should be attributed to Orlando (as opposed to appellants), because the ordinance specifically exempts dental gold from its reporting requirements. Orlando City Code § 43.54(1)(a)
 
 
 [35]
 See grey brief, at 4
 
 
 [36]
 See R2-48-16, 27, 33-35, 42 (deposition of Officer Johnny Redgrave)
 
 
 [37]
 See generally L. Tribe, American Constitutional Law, § 3-10, at 79-80 (2d ed. 1988) ("Constitutional concerns of ripeness must be applied to every aspect of a lawsuit.... Ripeness requirements ... constrain a court's power over remedies: even plaintiffs previously injured by a challenged exercise of governmental power may be foreclosed from relief sought to prevent speculative future harm." (emphasis in original; footnote omitted))
 
 
 [38]
 City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (internal quotations and citations omitted)
 
 
 [39]
 O'Shea v. Littleton, 414 U.S. 488, 497, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974)
 
 
 [40]
 See R2-58-35