**J & B SOCIAL CLUB # 1, INC. d/b/a The Candy Store and Jennifer Q. Bodiford, Plaintiffs,**

v.

**The CITY OF MOBILE, Defendant.**

**Civil Action No. 96–0246–BH–S.**

United States District Court, S.D. Alabama, Southern Division.

Oct. 2, 1996.

---

Slade Watson, Mobile, AL, for J & B Social Club # 1, Inc., Jennifer Q. Bodiford.

Donald M. Briskman, Mobile, AL, Luke Charles Lirot, Lirot & Dolan, Tampa, FL, for Sammy's of Mobile, Ltd.

Roderick P. Stout, Mobile, AL, W. Perry Hall, Stout & Rossler, Mobile, AL, for City of Mobile, AL.

Roderick P. Stout, Mobile, AL, for Glenda Morgan, Mabin Hicks, Clinton Johnson, Bess Rich, Reggie Copeland, Sr., Charles L. Waller, III, Thomas Sullivan, Vivian Figures, Richard Cashdollar, Harold L. Johnson, Michael Dow.

## ORDER

HAND, Senior District Judge.

This consolidated action, originally filed as two cases, is before the court on plaintiff Sammy's of Mobile, Ltd.'s (hereinafter "Sammy's") motion for summary judgment (doc. 43) and plaintiffs J & B Social Club # 1, Inc. d/b/a The Candy Store (hereinafter "The Candy Store") and Jennifer Bodiford's motion for summary judgment (doc. 44). Each motion challenges the constitutionality of Or-

dinance 03–003, enacted by the Mobile City Council. The defendant City of Mobile has filed a cross motion for summary judgment against both sets of plaintiffs (doc. 46).

This action implicitly raises two important issues regarding governmental power: first, at what governmental level—local, state, or federal—should issues such as liquor and nudity regulation be addressed; and second, whether these issues should be decided by legislative institutions or by the courts. In essence, the plaintiffs seek to have this court, pursuant to national authority, overturn the legislative will, expressed through its duly-elected representatives, of the City of Mobile.

The court will not approach these issues in the abstract, for this case presents a concrete controversy between the plaintiffs and the defendant. The judicial resolution of this controversy requires the application of the law, not the policy choices of presiding judge. Therefore, this ruling has nothing to say about the wisdom of the city's ordinance, only whether the ordinance is forbidden by the United States Constitution.

## PROCEDURAL BACKGROUND

On February 6, 1996, the City Council of Mobile enacted Ordinance 03–003, which, at its core, bans topless dancing in bars. Sammy's filed a complaint against the city in state court which was removed to this court on February 26, 1996. The complaint alleged that the ordinance violated the First Amendment free speech clause, the Fifth Amendment "takings clause," the equal protection clause of the Fourteenth Amendment, the substantive and procedural components of the due process clause of the Fourteenth Amendment, the ex post facto clause, was void for vagueness, and finally was unenforceable under the doctrine of equitable estoppel.[1] Simultaneously with the filing of the complaint, Sammy's moved for a temporary restraining order against the enforcement of the ordinance. After an evidentiary hearing on March 1, 1996, that motion was denied on March 6, 1996.

On March 12, 1996, The Candy Store filed a separate action against the city alleging

---

1. Everything but the kitchen sink.

that the same ordinance violates the First Amendment, the Fifth Amendment, is void for vagueness, is overbroad, violates the equal protection clause of the Fourteenth Amendment in that male breasts are treated differently from female breasts,[2] that the city intends to selectively enforce the ordinance, also in violation of the equal protection clause of the Fourteenth Amendment, and that the ordinance is unenforceable against The Candy Store under the doctrine of res judicata. The Candy Store, which seeks $2,000,000 in damages against the city, also filed a motion for a restraining order against the enforcement of Ordinance 03–003. After an evidentiary hearing on March 19 and 20, 1996, the court denied the plaintiffs' motion for an injunction against the city on March 26, 1996.

The two cases were consolidated under this civil action number on April 23, 1996. At a status conference meeting on August 12, 1996, the parties informed the court that they expected the issues presented in these lawsuits to involve primarily questions of law, and that the cases were amenable to summary judgment. On August 14, 1996, at the parties' requests, the court scheduled a shortened time period for the filing of summary judgment motions and responses. On September 5, 1996, the court heard oral argument from the parties on their respective motions for summary judgment. The motions are now ripe for review.

"Summary judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–28, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–53, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986). As indicated, legal issues predominate over factual ones in this action. Having reviewed the record, the court makes the following findings of fact and conclusions of law.

2. The complaint was amended to add this theory.

## FINDINGS OF FACT

1. On February 6, 1996, the Defendant City of Mobile enacted Ordinance 03–003 which, *inter alia,* bans topless female dancing in bars. City of Mobile Ordinance 03–003.

2. Prior to the ordinance being enacted, both plaintiffs were licensed to sell alcoholic beverages for on-premises consumption and offered topless female dancing. Dep. of Daniel Zimmern, at pp. 11–12; Trans. of Prelim. Inj. H'rg. on March 19–20, 1996, at pp. 118–120.

3. Daniel Zimmern, Vice–President of Sammy's Management Company, was notified of Ordinance 03–003 and had an opportunity to be heard at the Mobile City Council Meeting on February 6, 1996, when the ordinance was enacted. He declined to speak against the ordinance on the advice of the ordinance's legislative sponsor. Trans. of Prelim. Inj. H'rg. on March 6, 1996, at pp. 15–18, 20–23, 42.

4. Sammy's surrendered their liquor license in April, 1996. Zimmern Dep. at pp. 17, 18, 22, 23. Sammy's continues to offer expressive female dancing, though the dancers are now given the option of dancing totally nude, as well as simply topless. Zimmern Dep. at pp. 27–30 and 92–94.

5. The City of Mobile has not enforced Ordinance 03–003 against The Candy Store and Jennifer Bodiford. Letter of Slade Watson, dated August 1, 1996.

6. The city has expressed an intent to enforce the ordinance against bars offering topless female dancing, and has given no indication that it would enforce the ordinance against any other persons or entities. Trans. of Prelim. Inj. H'rg. on March 19–20, 1996, at pp. 45–46.

## LEGAL CONCLUSIONS

### A. FIRST AMENDMENT

Both plaintiffs claim that the city ordinance impermissibly curtails their First Amendment free speech rights. The First Amendment to the U.S. Constitution states:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Although the free speech clause of the amendment makes no mention of protecting *conduct* from congressional regulation, the Supreme Court has held on numerous occasions that, "[W]here the government prohibits conduct precisely because of its communicative attributes, we hold the regulation unconstitutional." *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 577, 111 S.Ct. 2456, 2466, 115 L.Ed.2d 504 (1991) (Scalia, J., concurring).

In its previous order of March 6, 1996, this court denied Sammy's motion for a temporary restraining order, finding that the ordinance "falls within a long line of cases upholding the states' authority to prohibit nude dancing in clubs licensed to sell alcohol." *See e.g., New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 718, 101 S.Ct. 2599, 2601, 69 L.Ed.2d 357, 361 (1981); *City of Newport, Kentucky v. Iacobucci,* 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986); *Lanier v. City of Newton, Ala.,* 842 F.2d 253 (11th Cir.1988).

■ Since the entry of the March 6, 1996, order, the Supreme Court rendered a decision in *44 Liquormart, Inc. v. Rhode Island,* —— U.S. —— 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996),[3] an unrelated First Amendment case. The plaintiffs contend that this decision "completely change[s] the 'playing field'" regarding the appropriate disposition of their First Amendment claim.[4] *44 Liquormart,* a commercial speech case, held, *inter alia,* that "the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amend-

ment." *Id.* —— U.S. at ——, 116 S.Ct. at 1515. Prior to *44 Liquormart,* the Court had held, in a series of cases beginning with *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), that the Twenty-first Amendment could serve to buttress the constitutionality of liquor regulations that potentially infringed upon First Amendment rights. *See e.g., LaRue,* 409 U.S. at 114, 93 S.Ct. at 395 ("[T]he broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals."); *Doran v. Salem,* 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975) ("[T]he broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a state could therefore ban such dancing as a part of its liquor license program.") (summarizing *LaRue*); *Bellanca,* 452 U.S. at 718, 101 S.Ct. at 2602 (holding that the broad powers conferred under the Twenty-first Amendment outweighed any "artistic or communicative value" attributable to topless dancing); *Iacobucci,* 479 U.S. at 95, 107 S.Ct. at 385 (holding that the states' Twenty-first Amendment regulatory authority "includes the power to ban nude dancing as part of a liquor license program."); *Lanier,* at 255 ("[S]tate regulation adopted pursuant to the twenty-first amendment enjoys a presumption of validity.") (citing *LaRue* ) (citations omitted). The suggestion in all these cases that the Twenty-first Amendment was a font of some sort of "super authority" above and beyond the considerable police powers retained by the States and which "trumped" the First Amendment when liquor regulation was at issue was clearly rejected in *44 Liquormart.*[5]

After *44 Liquormart,* the Twenty-first Amendment no longer provides an "added presumption" in favor of validity of state

---

3. Decided May 13, 1996.

4. Plaintiff's Sammy's of Mobile, LTD., Dispositive Motion for Summary Judgment and Memorandum of Points and Authorities, at p. 4.

5. The inference that Twenty-first Amendment conferred a "super police power" upon the

States was untenable both with the plain language of the amendment and with the foundational principle that the states delegated only certain powers to the federal government and retained all others, including the police powers, for themselves. *See e.g.,* The Federalist, # 45; *see also* U.S. Constitution, Amendment X.

regulation in the area of topless dancing. However, the same Court which restricted the "broad authority" under the Twenty-first Amendment—and thus undercut the *rationale* of the cases cited above—went to great pains to preserve the *holdings* of those very cases. *44 Liquormart* states:

> We are now persuaded that the Court's analysis in *LaRue* would have led to precisely the same result if it had placed no reliance on the Twenty-first Amendment. Entirely apart from the Twenty-first Amendment, the State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations ... Without questioning the holding in *LaRue*, we now disavow its reasoning insofar as it relied on the Twenty-first Amendment.

*Id.,* —— U.S. at ——, 116 S.Ct. at 1514. Indeed, the Court provided us with the roadmap for upholding the result in *LaRue,* citing two cases which upheld state regulation in this area without any involvement of alcoholic beverages. *Id.,* —— U.S. at ——, 116 S.Ct. at 1514 (citing *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)) (upholding a zoning ordinance separating "adult" theaters from residential neighborhoods and churches) and

*Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (upholding an Indiana public indecency statute which applied in the context of barroom topless female dancing).

Insofar as *Glen Theatre* dealt with a nudity statute, while *American Mini Theatres* dealt with a zoning ordinance, it appears that the *Glen Theatre* analysis is more applicable here, although the tests under both cases are remarkably similar.[6] Before beginning with the First Amendment analysis outlined in *Glen Theatre,* it is appropriate[7] to point out how this case is different from *Glen Theatre.* The ordinance at issue here does not ban certain forms of nudity, as did the Indiana statute in *Glen Theatre,* it only restricts the sale of alcoholic beverages in places where certain forms of nude entertainment, most commonly topless female dancing, are offered. Counsel for Sammy's contends that the limited nature of the city's ordinance makes it a content-based restriction and thereby invites strict scrutiny. Sammy's argument, however, is belied by the facts of their own operation. In an effort to comply with the ordinance, Sammy's has given up its liquor license and no longer serves alcohol on

---

**6.** As the court noted in *Glen Theatre,* the "time, place, or manner" test utilized in *American Mini Theatres* and *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) "has been interpreted to embody much the same standards as those set forth in *United States v. O'Brien.*" *Glen Theatre,* 501 U.S. at 566, 111 S.Ct. at 2460.

**7.** It is also worth mentioning how the Court has traditionally gone out of its way to distinguish between political and other forms of idea-oriented speech and forms of communication involving nudity or other sexually explicit expression. For example, in *LaRue,* the court indicated that the regulations sought to be struck down were aimed at performances that "partake more of gross sexuality than of communication." *LaRue,* 409 U.S. at 118, 93 S.Ct. at 397. Later, in *American Mini Theatres,* after indicating that society's interest in protecting the expression of eroticism is of a "wholly different, and lesser, magnitude than the interest in untrammeled political debate," the Court noted that, "few of us would march our sons and daughters off to war to preserve the citizens right to see 'Specified Sexual Activities' exhibited in the theaters of our choice." *Id.,* 427 U.S. at 70, 96 S.Ct. at 2452. In *Doran,* the Court stated in hardly a clear-cut

fashion: "[A]lthough the customary 'barroom' type of nude dancing *may* involve only the *barest minimum* of protected expression, we recognized in *California v. LaRue* that this form of entertainment *might* be entitled to First and Fourteenth Amendment protection *under some circumstances.*" *Doran,* 422 U.S. at 932, 95 S.Ct. at 2568 (citations omitted) (emphasis added). Finally, in the first case where the issue was squarely addressed, the court stated that, "nude dancing of the kind sought to be performed here is expressive conduct within the *outer perimeters* of the First Amendment, though we view it as *only marginally so.*" *Glen Theatre,* 501 U.S. at 565, 111 S.Ct. at 2459.

Hardly a case involving potential First Amendment protection of sexually explicit communication goes by without the Court purposefully going out of its way to belittle, or at least downgrade, the very constitutional protection these same cases purport to provide. While such language is puzzling insofar as the applicable First Amendment "test" is unchanged regardless of whether the relevant speech is fully protected or only marginally protected within the outer perimeters of the First Amendment. At the very least, such equivocation ought not to engender any sense of confidence in the plaintiffs.

its premises. Yet it continues to offer top-less dancing and has even expanded its menu of artistic/expressive communication to include completely nude dancing. There is no dispute that the ideas now being communicated at Sammy's are completely legal under the ordinance. The ordinance, therefore, is not a content-based restriction on naked expressive dancing, but rather is an attempt to regulate the commingling of such expression with intoxicating beverages. In this regard, the ordinance is less restrictive of expression than the one at issue in *Glen Theatre.*

■ With the Twenty-first Amendment no longer involved, *Glen Theatre* instructs that the proper First Amendment analysis for cases such as this one is the four-part test developed in *U.S. v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *O'Brien* held that expressive conduct can be validly regulated if (1) the regulation is a legitimate exercise of authority, (2) it furthers an important or substantial governmental interest, (3) the governmental interest is unrelated to the suppression of free speech, and (4) the restriction of First Amendment rights is no greater than necessary to further the government's interest.

■ Applying the first part of this test to the nude dancing at issue in *Glen Theatre,* the Court stated that the Indiana public indecency statute is "clearly within the constitutional power of the State." 501 U.S. at 567, 111 S.Ct. at 2461. Likewise, Alabama's police powers having been delegated to the city of Mobile,[8] the ordinance at issue here is clearly within the city's authority to enact.

■ The next part of the test asks whether the regulation furthers an important governmental interest. In *Glen Theatre,* the Court noted that it was impossible to discern Indiana's purpose in passing the indecency statute, but the plurality of the court was willing to infer that the statute's purpose was the protection of societal order and morality and that the law furthered this purpose.

Justice Souter, concurring, acknowledged the soundness of this inference, but nevertheless preferred to rest his concurrence on the "State's substantial interest in combating the secondary effects of adult entertainment establishments." 501 U.S. at 582, 111 S.Ct. at 2468. The city's preamble makes clear that its purpose is to discourage undesirable behavior and to protect the public health, safety, and welfare. This stated purposes combines elements of both the societal order and morality rationale as well as the discouragement of adverse secondary effects.

■ Counsel for both plaintiffs implicitly argue that the city's asserted interest in controlling "undesirable behavior" is really a sham. Plaintiffs contend that because no evidence of "adverse secondary effects" has been advanced by the city, the ordinance does not "further" the city's alleged interest. In short, because there has been no empirical evidence advanced by the city to justify its finding, counsel for Sammy's argues that the ordinance is "clearly content based, with no proper predicate and has resulted in nothing more than a discriminatory violation of plaintiff's civil rights." Sammy's brief, at p. 11.

It is axiomatic that the motives of individual legislators are irrelevant to the constitutional challenge here. *See e.g., O'Brien,* 391 U.S. at 383–384, 88 S.Ct. at 1681–1682. The question remains whether legislative findings must be supported by specific evidence or studies. Of course, if one assumes, as did the plurality in *Glen Theatre,* that societal order and morality are legitimate, substantial governmental interests,[9] then the city's ordinance would satisfy the second part of the *O'Brien* test. Even under Justice Souter's *Glen Theatre* concurrence, which preferred to view the governmental interest as the prevention of secondary effects, the city would not be required to advance specific evidence to justify the ordinance. Indiana's post hoc assertion in its brief that its indecency statute was aimed at controlling prosti-

---

8. *Lanier v. City of Newton, Ala.,* 842 F.2d 253 (11th Cir.1988).

9. "The law is constantly based on notions of morality, and if all laws representing essentially moral choices are to be invalidated under the

Due Process Clause, the courts will be very busy indeed." *Glen Theatre,* 501 U.S. at 569, 111 S.Ct. at 2462 (citing *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) ).

tution, sexual assaults, and other criminal activity, was enough "evidence" for Justice Souter. There was nothing in the statute, the legislative history, or the record developed in preparation for trial of any such secondary effects. *See Glen Theatre,* 501 U.S. at 567–568, 582–585, 111 S.Ct. at 2461–2462, 2468–2470. Justice Souter simply analogized the type of entertainment at issue in *Glen Theatre* to that at issue in *Renton, American Mini Theatres,* and *LaRue.* Without the benefit of any studies to justify his conclusion, Justice Souter asserted that the "live nude dancing at issue here is likely to produce the same pernicious secondary effects as the adult films displaying 'specified anatomical areas' at issue in *Renton.*" 501 U.S. at 584, 111 S.Ct. at 2469. It is clear that under either the plurality or the Souter concurrence in *Glen Theatre,* there is no constitutional requirement that the city make particularized findings regarding adverse secondary effects. As the court stated in *Cafe 207:*

> Evidence about secondary effects or, rather, the lack of them, is also clearly foreclosed. It is now established as a matter of law by Supreme Court jurisprudence culminating in [*Barnes v. Glen Theatre* ], that secondary effects of proscribed conduct may be taken into consideration by a court evaluating the governmental interests justifying impingement upon free speech rights even when, as in *Barnes,* there is no legislative history demonstrating that the lawmakers actually considered secondary effects or any other specific factor (such as protecting order and morality) in enacting the challenged law.

*Cafe 207, Inc. v. St. Johns County,* 856 F.Supp. 641, 645 (M.D.Fla.1994), *aff'd per curiam,* 66 F.3d 272 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1544, 134 L.Ed.2d 647 (1996). In enacting these types of laws, lawmakers may thus rely upon the experience of other cities, studies done in other cities, caselaw reciting findings on the issue, as well as their own wisdom and common sense without the courts second guessing each statute's rational basis. As the

court cited with approval in *Bellanca:* "Common sense indicates that any form of nudity coupled with alcohol in a public place begets undesirable behavior." 452 U.S. at 718, 101 S.Ct. at 2601. Based upon the foregoing, the court concludes that the city has satisfied the second part of the *O'Brien* test.[10]

■ The third part of the test asks whether the governmental interest is unrelated to the suppression of expression. Sammy's itself is proof that the city's aim is not to suppress the erotic message conveyed there. Even if one assumes that some measure of nudity is important to the message conveyed in artistic dancing (an assumption necessary for plaintiff's contention that the ordinance violates the First Amendment), Sammy's dancers would now be more expressive than ever before.

■ The fourth part of the test asks whether the government's interest is furthered by the ordinance in the least restrictive way. There is no question that the ordinance's requirement that the plaintiffs either provide some modest cover on their dancer's breasts or cease to serve alcohol is certainly a minimal restriction necessary for the furtherance of the city's interest in controlling the admixture of alcohol and nudity. As indicated above, the regulation need not moderate the expression at all. Based on the above reasons, the court concludes that summary judgment on the First Amendment claim is due to be granted in favor of the city of Mobile.

## B. OVERBREADTH

■ Both plaintiffs, but primarily The Candy Store, assert that the ordinance is overbroad and that it could be applied to First–Amendment protected activity engaged in by people or entities other than the instant plaintiffs. In this challenge, the Candy Store seeks to invoke the expanded standing rules that apply to overbreadth First Amendment challenges. In The Candy Store's motion for a preliminary injunction, this court declined to address the over-

---

**10.** Because of its legal holding that the city need not make particularized findings of adverse secondary effects, the defendant's motion to strike

the affidavit of Robert Bruce Mclaughlin (doc. 48) is MOOT.

breadth issue for reasons of justiciability. This court found that while the plaintiffs may have standing to raise an overbreadth challenge to the ordinance, the challenge brought in this action is not ripe for review. The city has repeatedly indicated that its current intention is to apply the ordinance only to institutions with on-premises liquor licenses that present topless or otherwise nude entertainment. The contention that the ordinance applies to other activities is pure speculation given the city's interpretation and announced enforcement intentions. *See e.g., Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 503, n. 21, 102 S.Ct. 1186, 1196, n. 21, 71 L.Ed.2d 362 (1982) ("The theoretical possibility that the village will enforce its ordinance against a paper clip next to Rolling Stone Magazine, [*Flipside, Hoffman Estate, Inc. v. Village of Hoffman Estates*] 639 F.2d 373, 382 (1981), is of no due process significance unless the possibility ripens into a prosecution"). *See also Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). For the reasons cited above and in the court's order of March 26, 1996, the court concludes that the motion for summary judgment on the overbreadth claim is due to be granted in favor of the City of Mobile.

## C. VAGUENESS

■ The Candy Store also asserts that the ordinance is void for vagueness. The ordinance has yet to be enforced against The Candy Store; hence, only a facial vagueness challenge is justiciable. *Diversified Numismatics, Inc. v. City of Orlando,* 949 F.2d 382, 387 (11th Cir.1991) ("Furthermore, because the Orlando ordinance has yet to be applied against the appellants, they must show that the ordinance 'is impermissibly vague in all of its applications' ") (citing *Village of Hoffman Estates,* 455 U.S. at 497, 102 S.Ct. at 1192).

As the court noted in its previous order, the ordinance clearly is not vague in all of its applications. There is no question that it prohibits topless female dancing in a bar such as the one owned and operated by The Candy Store. In addition, topless female dancing falls squarely within the hard core of the ordinance's proscriptions. *See e.g.,*

*Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973) ("Even if the outermost boundaries of § 818 may be imprecise, any such uncertainty has little relevance here, where appellants' conduct falls squarely within the 'hard core' of the statute's prescriptions"). For the above reasons and for those cited in the court's order of March 26, 1996, summary judgment on the vagueness issue is due to be granted in favor of the City of Mobile.

## D. EQUAL PROTECTION/INVIDIOUS DISCRIMINATION

■ The Candy Store contends that the ordinance violates the equal protection clause in that the definition of nudity in the ordinance includes female, but not male, breasts. Such a claim, however, does not necessarily raise a classification impermissibly based upon gender. "The Constitution is violated when government, state or federal, invidiously classifies similarly situated people on the basis of the immutable characteristics with which they were born." *Michael M. v. Sonoma County Superior Court,* 450 U.S. 464, 477–478, 101 S.Ct. 1200, 1208–1209, 67 L.Ed.2d 437 (1981) (Stewart, J., concurring). Thus, "while detrimental gender classifications by government often violate the Constitution, they do not always do so, for the reason that there are differences between males and females that the Constitution necessarily recognizes." *Id.* It is apparent to the naked eye, and this court takes judicial notice, that female breasts are quite often different from male ones. In this regard, men and women are not "similarly situated," and the ordinance therefore raises no impermissible gender classification.

Assuming, however, that such a distinction is "gender-based" for equal protection purposes, the court finds that the distinction is substantially related to an important governmental interest. *See, e.g., U.S. v. Biocic,* 928 F.2d 112 (4th Cir.1991); *See also Craft v. Hodel,* 683 F.Supp. 289 (D.Mass.1988); *Tolbert v. City of Memphis,* 568 F.Supp. 1285 (W.D.Tenn.1983). For the above reasons, the court concludes that the motion for summary judgment on The Candy Store's equal

**1140**

protection claim is due to be granted in favor of the City of Mobile.

### E. REMAINING CLAIMS

 Sammy's has raised an equal protection argument in that topless bars are treated differently from other businesses. Without citing any authority, Sammy's contends that the ordinance violates a fundamental right and that the classification must be narrowly tailored to serve a compelling governmental interest. No such fundamental right is at issue, however, and the court finds that Sammy's challenge does not overcome rational basis equal protection review.

Sammy's has also raised procedural and substantive due process claims without citing any authority for same. As indicated previously, an individual representing Sammy's had notice of the hearing when the ordinance was passed, was present at same, heard testimony from those who supported and opposed the motion, and declined to speak on the advice of the ordinance's sponsor. Further, no statutory notice provisions were violated in enacting the ordinance, and Sammy's could cite no cases where the requirements of procedural due process would apply to this legislative enactment. For these reasons and for the reasons given in the March 6, 1996, order of this court, these claims are without merit.

Sammy's equitable estoppel claim is likewise without merit for the reasons given in the court's order of March 6, 1996.

The Candy Store's selective enforcement and res judicata claims are without merit for the reasons given in the court's order of March 26, 1996.

 Both plaintiffs have raised Fifth Amendment takings claims without any attempt to show how their property has been "taken for public use." Regulations which deprive a property owner of only a portion of the economic value of his land do not rise to the level of a taking under the Fifth Amendment. *Lucas v. South Carolina,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). The plaintiffs have come forward with no evidence whatsoever to indicate that their property is no longer economically viable. This claim is likewise without merit.

For the foregoing reasons, the city's motion for summary judgment on all claims raised by the plaintiffs is due to be and hereby is **GRANTED.**